[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-14267

————————————————

D.C. Docket No.  4:97-cr-00182-JRH-BKE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS BRYANT, JR.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia

————————————————

(May 7, 2021)

Before MARTIN, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

Thomas Bryant is a corrupt former police officer who was sentenced to prison

for running drugs and guns. He filed a motion seeking a reduction in his sentence

under 18 U.S.C. § 3582(c)(1)(A), and the district court denied that motion based on

the Sentencing Commission's policy statement found at U.S.S.G. § 1B1.13. In resolving Bryant's appeal, we must answer two questions about the relationship between Section 3582(c)(1)(A) and 1B1.13.

First, we must decide whether district courts reviewing defendant-filed motions under Section 3582(c)(1)(A) are bound by the Sentencing Commission's policy statement. Under Section 3582(c)(1)(A), a court can reduce an otherwise final sentence for "extraordinary and compelling reasons," as long as the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." The statute commands the Commission to publish a policy statement that defines "extraordinary and compelling reasons," 28 U.S.C. § 994(t), and the Commission did: 1B1.13, which is entitled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)." At the time, the statute required all motions to be filed by the BOP. The policy statement repeats that then-existing statutory language and, in its application notes, lists several circumstances that are "extraordinary and compelling reasons" that justify a sentence reduction.

So far, so good. But after Congress changed the statute to allow defendants to file motions in addition to the BOP, several of our sister circuits have held that 1B1.13 is not an "applicable policy statement[]" for those defendant-filed motions. This is so, they say, because the policy statement, quoting the pre-existing statute's language, begins with the following phrase: "Upon motion of the Director of the

Bureau of Prisons." Based mostly on that language, our sister circuits have held that this policy statement is not an "applicable policy statement" that binds judicial discretion as to defendant-filed motions.

We disagree with that reasoning. The statute's procedural change does not affect the statute's or 1B1.13's substantive standards, specifically the definition of "extraordinary and compelling reasons." The Commission's standards are still capable of being applied and relevant to all Section 3582(c)(1)(A) motions, whether filed by the BOP or a defendant. And the structure of the Guidelines, our caselaw's interpretation of "applicable policy statement," and general canons of statutory interpretation all confirm that 1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, no matter who files it.

Second, because we conclude that 1B1.13 is an applicable policy statement, we must determine how district courts should apply that statement to motions filed under Section 3582(c)(1)(A). Bryant argues that Application Note 1(D) of 1B1.13 conflicts with the statute's recent amendment. As a catch-all provision, Application Note 1(D) says that a court may grant a motion if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Bryant argues that, because the statute now allows for defendant-filed motions, we should replace "as determined by the [BOP]" with

3

"as determined by the [court]." This alteration to the policy statement would give courts effectively unlimited discretion to grant or deny motions under Application Note 1(D).

But we cannot do that. Application Note 1(D) is not inconsistent with the procedural change in the statute that allows defendants to file motions. Because we can apply both the amended Section 3582(c)(1)(A) and Application Note 1(D), we must apply both.

In short, 1B1.13 is an applicable policy statement for all Section 3582(c)(1)(A) motions, and Application Note 1(D) does not grant discretion to courts to develop "other reasons" that might justify a reduction in a defendant's sentence. Accordingly, we affirm.

## I. BACKGROUND

### A. Factual Background

Thomas Bryant used to be a cop. But he abused that position, flouting the law that he had vowed to uphold. For years, Bryant worked with other officers to help traffic cocaine. Armed and in uniform—often in police vehicles—they acted as the cocaine couriers' personal security detail. Bryant also sold cocaine and stolen guns himself. And he passed along confidential police information to the cocaine gang.

But duplicity begets duplicity. Soon enough, one of the informed became an informant and turned on his fellow criminals. A jury convicted Bryant of multiple

drug and gun offenses. The district court eventually sentenced him to 292 months imprisonment to be followed by a mandatory, consecutive 300 months.

## B. Statutory Background

In 2018, Congress passed and the President signed the First Step Act. Bryant brought his motion to reduce his sentence under that Act. To understand the FSA, we look first to the history of federal sentencing.

For a long time, sentencing judges had nearly unbridled discretion, bound only by statutory minimums or maximums. *United States v. Irey*, 612 F.3d 1160, 1180–81 (11th Cir. 2010) (en banc); *see also Dorszynski v. United States*, 418 U.S. 424, 431 (1974) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end."). Parole boards also had discretion to release a prisoner after he had served as little as one third of his sentence, *see, e.g.*, *Barber v. Thomas*, 560 U.S. 474, 482 (2010), obscuring at sentencing the actual amount of time that the defendant would serve. *Cf. Setser v. United States*, 566 U.S. 231, 248 (2012) (Breyer, J., dissenting) (explaining the system as involving "a parole commission and a judge trying to second-guess each other about the time an offender will actually serve in prison"). That system spawned drastic disparities and uncertainty in sentencing, which drove Congress to pass the Sentencing Reform Act of 1984. *See Irey*, 612 F.3d at 1180–81.

5

The SRA sought uniformity and honesty in sentencing. To achieve uniformity, it created the U.S. Sentencing Commission and delegated to it the power to create a comprehensive system of sentencing guidelines. *See Peugh v. United States*, 569 U.S. 530, 535 (2013). To achieve honesty, it abolished the parole system and prohibited courts from "modify[ing] a term of imprisonment once it ha[d] been imposed," 18 U.S.C. § 3582(c). *See Barber*, 560 U.S. at 481–82.

Nonetheless, the SRA provided three narrow exceptions to that general prohibition on sentence modification, one of which is relevant here. *See United States v. Denson*, 963 F.3d 1080, 1086 (11th Cir. 2020). Section 3582(c)(1)(A) allows a court to reduce a term of imprisonment for extraordinary and compelling reasons. But the SRA did not put district courts in charge of determining what would qualify as extraordinary and compelling reasons that might justify reducing a prisoner's sentence. Instead, it directed the Commission to define "what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples" and to do so through "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)." 28 U.S.C. § 994(t); *see also* 28 U.S.C. § 994(a)(2)(C).

The only boundary the SRA placed on the Commission's definition was that "[r]ehabilitation … alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And it required district courts to follow that definition.

6

18 U.S.C. § 3582(c)(1)(A); *see Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *United States v. Colon*, 707 F.3d 1255, 1262 (11th Cir. 2013). Put another way, the SRA made clear that a district court cannot grant a motion for reduction if it would be inconsistent with the Commission's policy statement defining "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A).

It took the Commission over twenty years to publish its substantive definition of "extraordinary and compelling reasons." U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2007). That definition listed four reasons as extraordinary and compelling: (i) a "terminal illness"; (ii) a "permanent physical or medical condition" or "deteriorating physical or mental health because of the aging process," which "substantially diminishes the ability of the defendant to provide self-care" in prison; (iii) "death or incapacitation of the defendant's only family member capable of caring for" a minor child; and (iv) "[a]s determined by the Director of the Bureau of Prisons, … an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (i), (ii), and (iii)." *Id.* at § 1B1.13 cmt. n.1(A). In addition to that definition, the policy statement—found at U.S.S.G. § 1B1.13—required that a defendant not be a danger to society. *Id.* at § 1B1.13(2).

But the Commission's twenty-year delay mattered little because Section 3582(c)(1)(A) allowed only the BOP to file those motions, and the BOP rarely did so. In fact, the BOP failed to file reduction motions even if a defendant's reasons

were extraordinary and compelling. The BOP's reticence sparked criticism. For example, a DOJ report found that the "BOP [did] not properly manage the compassionate-release program, resulting in inmates who may be eligible candidates for release not being considered." U.S. Dep't of Justice: The Federal Bureau of Prisons' Compassionate Release Program 11 (Apr. 2013).

In response to the criticism, the Commission conducted an "in-depth review," held a public hearing, and revised 1B1.13. U.S.S.G. App. C, Amend. 799 at 135 (effective Nov. 1, 2016). It expanded, reorganized, and clarified the four categories of extraordinary and compelling reasons. *See id.* at 132–33. Now, the first category—"medical condition of the defendant"—no longer requires "a specific prognosis of life expectancy" to grant relief for a terminal illness. U.S.S.G. § 1B1.13 cmt. n.1(A)(i) (U.S. Sent'g Comm'n 2016). The medical-condition category also subsumed the previous inability-for-self-care category and allows relief for "serious functional or cognitive impairment" that "substantially diminished" the ability for self-care. *Id.* at § 1B1.13 cmt. n.1(A)(ii). The new second category—"age of the defendant"—explains that deterioration due to age is extraordinary and compelling even if it does not diminish the ability for self-care as long as the defendant is at least 65 years old and has served the lesser of 10 years or 75 percent of his sentence. *Id.* at § 1B1.13 cmt. n.1(B). The third category—"family circumstances"—is broader, now allowing relief if a defendant becomes the only potential caregiver for a minor

8

child *or* for a spouse. *Id.* at § 1B1.13 cmt. n.1(C). And the catch-all "other reasons" category remained the same. *Id.* at § 1B1.13 cmt. n.1(D).

The 2016 amendment also added a clause making explicit that 1B1.13 "implements 28 U.S.C. § 994(a)(2) and (t)," which required it "to develop general policy statements regarding … the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c)" and mandated that it "describe what should be considered extraordinary and compelling reasons for sentence reduction." U.S.S.G. § 1B1.13 cmt. (backg'd). It changed the title from "Reduction in Term of Imprisonment as a Result of Motion by Director of Bureau of Prisons (Policy Statement)" to "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)." U.S.S.G. App. C, Amend. 799 at 132 (effective Nov. 1, 2016).

It even made a direct plea to the BOP, encouraging it to file Section 3582(c)(1)(A) motions "if the defendant meets any of the circumstances set forth in [1B1.13]." U.S.S.G. § 1B1.13 cmt. n.4 (2016). In explaining its reasons for that plea, the Commission pointed to testimony and public comment that described the "inefficiencies" in the BOP review of Section 3582(c)(1)(A) applications, which could "delay or deny [relief], even in cases where the applicant appear[ed] to meet the criteria for eligibility." U.S.S.G. App. C, Amend. 799 at 136 (Reason for Amendment) (effective Nov. 1, 2016). It acknowledged that "the Commission's

9

policy statement is not legally binding on the [BOP]" and explained that "the new commentary [was] intended to encourage the [BOP Director] … to file a motion under section 3582(c)(1)(A) when the criteria in this policy statement are met." *Id.* at 136–37.

Most recently, the FSA expanded who could file a motion for a reduction of sentence. The statute initially read "the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment."   18 U.S.C. § 3582(c)(1)(A) (1984) (amended 2018). The First Step Act added the italicized language: "the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment." Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (amending 18 U.S.C. § 3582). In addition to allowing defendant-filed Section 3582(c)(1)(A) motions, the FSA also required the BOP to notify prisoners when they may be eligible and to help them craft and file their motions. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (amending 18 U.S.C. § 3582).

*C. Procedural Background*

Post-FSA, Bryant filed a Section 3582(c)(1)(A) motion, arguing that his situation presented extraordinary and compelling reasons warranting a reduction. In support, he pointed to several facts: (1) he would not be subject to a 25-year mandatory minimum if he were sentenced today; (2) he received a higher sentence than some of his coconspirators because he chose to go to trial; and (3) he has a good record of rehabilitation in prison. He asked that the district court reduce his sentence to time-served—releasing him over 25 years early. The government responded that none of those reasons, alone or in combination, meet the Sentencing Commission's binding definition of extraordinary and compelling in 1B1.13. The district court agreed and denied Bryant's motion "for the reasons stated in the Government's response."

## II. STANDARD OF REVIEW

We review *de novo* both determinations about a defendant's eligibility for a Section 3582(c) sentence reduction and questions of statutory interpretation. *United States v. St. Amour*, 886 F.3d 1009, 1013 (11th Cir. 2018); *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020); *see also Dillon v. United States*, 560 U.S. 817, 826–27 (2010) (treating the eligibility determination as one of statutory interpretation). We also "review *de novo* the interpretation of a sentencing guideline." *United States v. Warren*, 820 F.3d 406, 407 (11th Cir. 2016). Because

11

Section 3582(c)(1)(A) permissively states that a district court "may" reduce a sentence after eligibility is established, we review for abuse of discretion a district court's grant or denial of an eligible defendant's reduction request. 18 U.S.C. § 3582(c)(1)(A) (stating that, "if [a court] finds" that a defendant meets both eligibility criteria, it "may reduce" the sentence after considering the 3553(a) factors); *see Dillon*, 560 U.S. at 826–27 (holding in an analogous Section 3582(c)(2) analysis that after a court establishes eligibility, it determines "in its discretion" whether "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)").

## III. DISCUSSION

Finality is "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). "Deterrence depends upon [it.] … Rehabilitation demands [it.] … [And it] benefits the victim by helping [her] put the trauma of the crime and prosecution behind [her]." *Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1325 (11th Cir. 2017) (cleaned up). That is why courts are generally forbidden from altering a sentence once it becomes final. *United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020). But as a "congressional act of lenity," Section 3582(c) authorizes three narrow sentence-modification proceedings. *United States v. Maiello*, 805 F.3d 992, 1000 (11h Cir. 2015) (quoting *Dillon v. United States*, 560 U.S. 817, 828 (2010)).

One of those—Section 3582(c)(1)(A)—allows a court to reduce a sentence for extraordinary and compelling reasons. But Section 3582(c)(1)(A) allows a sentence reduction only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," one of which must define "extraordinary and compelling reasons," 28 U.S.C. § 994(t). *See also* 28 U.S.C. § 994(a)(2). The Commission published its definition at U.S.S.G. § 1B1.13 in its policy statement titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13.

The answer to whether the Commission's definition of "extraordinary and compelling reasons" binds district courts is clear. Indeed, both the Supreme Court and this Court have held that Congress's consistent-with requirement makes the relevant policy statements binding on district courts. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *United States v. Colon*, 707 F.3d 1255, 1262 (11th Cir. 2013). But parts of the current policy statement are in tension with the FSA. For example, the policy statement still opens with the prefatory clause "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)" and later states that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G § 1B1.13 & cmt. n.4. Some argue that other parts of 1B1.13 are also in tension with the FSA—mainly, Application Note 1(D), which describes

13

the fourth category of extraordinary and compelling reasons as any unlisted reason that the BOP puts forward. This debate has spawned two questions: (1) Is 1B1.13 an applicable policy statement for defendant-filed Section 3582(c)(1)(A) motions? (2) If it is, how does a court apply Application Note 1(D) to a motion like Bryant's?

Bryant's main argument is about Application Note 1(D). But several of our sister circuits have concluded that 1B1.13 is not an "applicable policy statement[]" at all for defendant-filed motions. *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v. Shkambi*, No. 20-40543 (5th Cir. April 7, 2021); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020); *United States v. Aruda*, No. 20-10245 (9th Cir. April 8, 2021); *United States v. Maumau*, No. 20-4056 (10th Cir. April 1, 2021). Until now, we have expressly reserved judgment on this question. *United States v. Harris*, 989 F.3d 908, 912 & n.2 (11th Cir. 2021). Given the importance of this threshold question, we turn to it first.

### A. *"Applicable Policy Statement" Under 18 U.S.C. § 3582(c)(1)(A)*

We interpret a statute based on the ordinary meaning of its text when it was enacted. *Wis. Cent. Ltd. v. United States*, 138 S.Ct. 2067, 2074 (2018) ("[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute.'"). In other words, "for hard cases as well as easy ones,

14

the commonsense reading of the relevant statutory text is the anchor for statutory interpretation." *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1825 (2020) (Kavanaugh, J., dissenting) (cleaned up) (quoting W. Eskridge, Interpreting Law 33, 34–35 (2016)). As guidance for a word's ordinary meaning, we look to many sources—dictionaries, context, cannons of interpretation, and others. *See PETA v. Miami Seaquarium*, 879 F.3d 1142, 1146–47 (11th Cir. 2018); *FCC v. AT&T Inc.*, 562 U.S. 397, 404–09 (2011). Here, those sources universally establish that the commonsense reading of "applicable policy statements" includes U.S.S.G § 1B1.13, no matter who files the motion.

### 1. *The dictionary definition of "applicable"*

We will start with the dictionary. *AT&T*, 562 U.S. at 404 (discussing use of dictionaries in determining meaning). "Applicable" has two main dictionary definitions. One definition is "capable of being applied." *Applicable*, Black's Law Dictionary (11th ed. 2019); Webster's Third New International Dictionary 105 (1986). The other definition is "relating to" or "relevant." *Jones*, 980 F.3d at 1109 (defining "applicable" as "'relevant' or 'appropriate'" (quoting *United States v. Ruffin*, 978 F.3d 1000, 1007 (6th Cir. 2020))); *applicable*, Black's Law Dictionary (11th ed. 2019) ("2. (Of a rule, regulation, law, etc.) affecting or relating to a

15

particular person, group, or situation; having direct relevance"); Webster's Third New International Dictionary 105 (1986).

As to the first definition: the substantive standards in 1B1.13 are clearly capable of being applied to defendant-filed reduction motions. Indeed, since the FSA was enacted, district courts have consistently applied the Commission's definition of "extraordinary and compelling reasons" to Section 3582(c)(1)(A) motions, regardless of who filed them. And of the circuit courts that have addressed Section 3582(c)(1)(A) motions, all but one have applied 1B1.13's standards to defendant-filed reduction motions in individual cases.[1] In fact, even though several of our sister circuits have held that 1B1.13 is not an applicable policy statement, some of those same courts have continued to apply its substantive standards in particular cases. *See United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020); *United States v. Carter*, 830 F. App'x 783, 784–85 (7th Cir. 2020); *cf. United States v. Hood*, No. 20-6243, slip op. at 2–6 (6th Cir. April 15, 2021). Because courts have consistently applied the substantive standards in 1B1.13 to defendant-filed motions, it is impossible to say that 1B1.13 cannot be applied.

---

[1] *See, e.g., United States v. Doe*, 833 F. App'x 366, 367 & n.2 (3d Cir. 2020); *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (applying 1B1.13 criteria and explaining that "[t]he Sentencing Commission's policy statements … control the disposition of Taylor's motion"); *United States v. Thompson*, 984 F.3d 431, 433–34 (5th Cir. 2021); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Cochran*, 833 F. App'x 5, 8–9 (7th Cir. 2020); *United States v. Vangh*, 990 F.3d 1138, 1141 & n.3 (8th Cir. 2021); *United States v. Carpenter*, 816 F. App'x 159, 159–160 (9th Cir. 2020); *United States v. Pinson*, 835 F. App'x 390, 394–95 (10th Cir. 2020); *United States v. Wedgeworth*, 837 F. App'x 738, 739–40 (11th Cir. 2020).

The second definition of "applicable" produces similar results: 1B1.13 is a relevant or related policy statement for defendant-filed Section 3582(c)(1)(A) motions. Several circuits have explicitly called 1B1.13 the "relevant policy statement" for defendant-filed Section 3582(c)(1)(A) motions.[2] And other circuits have also treated it as relevant to defendant-filed Section 3582(c)(1)(A) motions.[3] In fact, in opinions asserting that 1B1.13 is not an applicable policy statement, five of our sister circuits have also found that 1B1.13 is "relevant" to or "helpful" for defendant-filed Section 3582(c)(1)(A) motions.[4] Of course, that does not make

---

[2] *See, e.g.*, *United States v. Ruffin*, 978 F.3d 1000, 1001, 1003, 1004–05 (6th Cir. 2020); *United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020); *cf. Gunn*, 980 F.3d at 1180 ("The most recent Guidelines Manual has a policy statement, U.S.S.G. § 1B1.13, implementing [Section 3582(c)(1)(A)]."); *Aruda*, No. 20-10245, slip op. at *8 ("The Sentencing Commission's policy statement regarding 'Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)' is found at U.S.S.G. § 1B1.13.").

[3] *United States v. Lugo*, 832 F. App'x 799, 800 (3d Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *United States v. Pinson*, 835 F. App'x 390, 394–95 & n.5 (10th Cir. 2020) ("We recognize that some courts have concluded that passage of the First Step Act has reduced—or even eliminated—the relevance of the Sentencing Commission's policy statement. … [But] we have continued to refer to it in deciding challenges related to § 3582(c)(1).").

[4] *See United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020) ("That does not leave Guideline § 1B1.13 without practical import. …. [I]t remains helpful guidance even when motions are filed by defendants."); *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021) ("That is not to say a district court cannot permissively consider those four categories as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release. … [B]ecause district courts are free to define 'extraordinary and compelling' on their own initiative, they may look to § 1B1.13 as relevant, even if no longer binding." (internal quotation marks and citations omitted); *Gunn*, 980 F.3d at 1180 ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."); *Aruda*, No. 20-10245, slip op. at *11; *United States v. McGee*, No. 20-5047, slip op. at *24 (10th Cir. March 29, 2021).

17

sense: if the policy statement is relevant to the motion and helpful for adjudicating the motion, then it must be an "applicable" statement under the statute.

As these authorities recognize, nothing about 1B1.13 make it less "capable of application," "relevant," or "helpful" to defendant-filed motions than to BOP-filed motions. The policy statement itself is mostly a quotation of the statute and adds only one additional requirement: the defendant must not be dangerous. U.S.S.G. § 1B1.13(2). The commentary identifies four categories of extraordinary and compelling reasons, one of which the defendant must fit to be eligible for relief. U.S.S.G. § 1B1.13 cmt. n.1. It does not matter that these categories are found in the commentary instead of the text because a policy statement and its commentary are "legal equivalent[s]" that should be treated the same. *Stinson v. United States*, 508 U.S. 36, 43 (1993); *United States v. Irey*, 612 F.3d 1160, 1219 n.38 (11th Cir. 2010) (en banc). So to apply 1B1.13, a court simply considers a defendant's specific circumstances, decides if he is dangerous, and determines if his circumstances meet any of the four reasons that could make him eligible for a reduction. If he is dangerous or if his circumstances do not match any of the four categories, then he is ineligible for a reduction. If he is not dangerous and his circumstances fit into an approved category, then he is eligible, and the court moves on to consider the Section 3553(a) factors in evaluating whether a reduction should be granted.

The process is the same for defendant-filed motions and BOP-filed motions. As an example, the Eighth Circuit recently affirmed a district court's application of 1B1.13 to a defendant-filed motion. *United States v. Vangh*, 990 F.3d 1138, 1141 (8th Cir. 2021). To apply 1B1.13, the district court considered the defendant's medical conditions and, relying on the text of the "medical condition" category in Application Note 1(A), found that his medical condition did not fall into that category because he had not shown that it "substantially diminished his ability to provide self-care." *Id.* Accordingly, it denied relief. *Id.* And the Eighth Circuit, assuming that 1B1.13 applied, affirmed. *Id.* at 1141 & n.3. It's as simple as that.

### 2. Context

The context further supports our conclusion that 1B1.13 is applicable. That context is vital to understanding what Congress meant by "applicable policy statements issued by the Sentencing Commission," because although a statutory phrase, "considered in isolation, may be open to competing interpretations," when it is considered "in conjunction with the purpose and context," often "only one interpretation is permissible." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7–8 (2011). So we look now to the "structure of the law itself," *Food Mktg. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2364 (2019), including "how the Guidelines interact with federal statutes." *See Dorsey v. United States*, 567 U.S. 260, 264–65 (2012); *cf. United States v. LaBonte*, 520 U.S. 751, 763 (1997) (Breyer, J.,

dissenting) ("To understand the legal issue before us, one must keep in mind both what the Guidelines are and how they work.").

There are two important contextual factors here: the Commission's statutory role in defining "extraordinary and compelling reasons" and the way courts use the Guidelines every day.

First, to curtail judicial discretion, the statute specifically directs the Commission to adopt a policy statement that defines "extraordinary and compelling reasons." As we have previously explained, "[t]he Act not only gives the Commission authority to issue policy statements governing sentence reductions, it actually requires the Commission to issue them." *United States v. Colon*, 707 F.3d 1255, 1259 (11th Cir. 2013). The reason Congress requires them is that it "made [the policy statement] binding on courts by providing that a sentence may be reduced … only where doing so is consistent with the Commission's policy statements." *Id.* at 1262. Importantly, this is not a task that the statute allocates to courts. Although the statute charges courts with making the discretionary call about whether a sentence should ultimately be reduced, the Commission is tasked with defining the universe of "extraordinary and compelling circumstances" that can justify a reduction.

There is no question that 1B1.13 is *the* policy statement the Commission adopted to comply with this statutory mandate. *See, e.g.*, *Gunn*, 980 F.3d at 1180 ("The most recent Guidelines Manual has a policy statement, U.S.S.G. § 1B1.13,

20

implementing [Section 3582(c)(1)(A)]."); *Maumau*, No. 20-4056, slip op. at *25 ("The Commentary to [Section] 1B1.13 [was] in obvious response to Congress's mandate to the Sentencing Commission in [Section] 994(t) to 'describe what should be considered extraordinary and compelling reasons for a sentence reduction' … ."). The policy statement is explicit that it "implements 28 U.S.C. § 994(a)(2) and (t)," which require the Commission "to develop general policy statements regarding … the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c)." The title of 1B1.13—"Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"—also makes that clear. *See Aruda*, No. 20-10245, slip op. at *8 ("The Sentencing Commission's policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" is found at U.S.S.G. § 1B1.13."). As does the Sentencing Guidelines' index entry for "reduction in term of imprisonment," which lists "under 18 U.S.C. § 3582(c)(1)(A)[:] 1B1.13." In other words, the statutory context shows us that the Commission had an obligation to define "extraordinary and compelling reasons" for all motions under the statute, and that the Commission did so in 1B1.13.

Second, 1B1.13 is "applicable" in the same way anything else in the sentencing guidelines is "applicable"—it implements the relevant statute. At each sentencing, a sentencing court must first determine the "applicable guideline." U.S.S.G. § 1B1.2. To do so, a court notes the statute of conviction and then turns to

Appendix A to see which guideline corresponds with that statute. *United States v. Baldwin*, 774 F.3d 711, 732 (11th Cir. 2014). A sentencing court must ask only what guideline the Commission has tied to the relevant statute; it is prohibited from looking at the "circumstances of a particular case" to determine the "applicable guideline." *United States v. Irey*, 612 F.3d 1160, 1242 (11th Cir. 2010) (en banc). After a court determines the applicable guideline, it uses that guideline to determine the "applicable guideline range." U.S.S.G. § 1B1.2(b). The "applicable guideline" and the "applicable guideline range" are still "applicable" even if they do not ultimately control the defendant's case. *See* U.S.S.G. § 5G1.1; *Koons v. United States*, 138 S.Ct. 1783, 1790 (2018); *Neal v. United States*, 516 U.S. 284, 293–96 (1996). In other words, determining whether something is an "applicable guideline" under the Sentencing Guidelines is resolved based on the statutory provision at issue and nothing else.

So, consistent with the structure of the Guidelines as a whole and with the Commission's choices about how to structure its policy statements, an applicable policy statement for a sentence reduction is the one that corresponds with the reduction motion's authorizing statute. For this reason, this Court has described the applicable policy statement when evaluating a sentence reduction as "[t]he Commission's policy statement on" the relevant statute. *United States v. Glover*, 686

F.3d 1203, 1206 (11th Cir. 2012), *abrogated on other grounds by* Amendment 780.[5]

An "applicable policy statement" has also been characterized as a policy statement "related" to, *Dillon*, 560 U.S. at 834 (Stevens, J., dissenting), "concerning," *United States v. Melton*, 861 F.3d 1320, 1326 (11th Cir. 2017), "corresponding" with, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013), or "governing," *Freeman v. United States*, 564 U.S. 522, 530 (2011) (plurality opinion); *Dillon*, 560 U.S. at 819; *United States v. Colon*, 707 F.3d 1255, 1258 (11th Cir. 2013), the relevant statutory provision. And in all of the Supreme Court's and this Court's applicable-policy-statement determinations, the statutory provision authorizing the reduction motion has always been the only consideration. *Cf. McCoy*, 981 F.3d at 282 ("The only policy statement that possibly could be 'applicable' to the defendants' motions is … Guideline § 1B1.13."). In other words, a court should find the "applicable" policy statement by looking at the statute it implements. For Section

---

[5] These precedents interpret "applicable policy statement" in the parallel provision, Section 3582(c)(2). But that is of no moment because this Court has already concluded that precedents about Section 3582(c)(2) are instructive when interpreting Section 3582(c)(1)(A), *Harris*, 989 F.3d at 911, as have our sister circuits, *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020); *United States v. Kibble*, No. 20-7009, slip op. at *4–5 (4th Cir. April 1, 2021); *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *Jones*, 980 F.3d at 1106–07 & nn.10, 11; *United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020). That makes sense because "Section 3582(c)(2)'s language mirrors [Section] 3582(c)(1)'s in relevant respects." *Kibble*, No. 20-7009, slip op. at *2. Additionally, the exact same phrase—"applicable policy statement"—is used in both of these parallel provisions.

3582(c)(1)(A) motions the applicable policy statement is 1B1.13; for Section 3582(c)(2) motions, it is 1B1.10.  That is the way the Guidelines operate.

### 3. Statutory purpose

The statute's purpose also supports our reading. As between two competing interpretations, we must favor the "textually permissible interpretation that furthers rather than obstructs" the statute's purposes. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 4, at 63 (2012)). Interpreting 1B1.13 as an applicable policy statement for all Section 3582(c)(1)(A) motions is not only a textually permissible interpretation, it is the better one. It both furthers the SRA's purposes and effectuates other congressional sentencing decisions, such as mandatory minimums and retroactivity.

The SRA's purpose was to limit discretion and to bring certainty and uniformity to sentencing. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 264 (2005); *see also United States v. Irey*, 612 F.3d 1160, 1181 (11th Cir. 2010) (en banc) ("[L]imiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005))). To achieve that aim, Congress created the Sentencing Commission and delegated to it the authority to create the Sentencing Guidelines. *United States v. Harris*, 876 F.2d 1502, 1505 (11th Cir. 1989) ("Congress'[s] aim in creating the Sentencing Commission was to reduce the

24

sentencing disparities and 'establish sentencing policies and practices for the Federal criminal justice system that ... provide certainty and fairness in meeting the purposes of sentencing.'"). The Guidelines, in turn, "provide uniformity, predictability, and a degree of detachment lacking in our earlier system." *Koon v. United States*, 518 U.S. 81, 113 (1996). Congress also gave the Commission a "substantial role" in sentence-modification proceedings by directing it to define the circumstances that justify a reduced sentence. *See Dillon*, 560 U.S. at 826.

Interpreting 1B1.13 as inapplicable to defendant-filed Section 3582(c)(1)(A) motions would return us to the pre-SRA world of disparity and uncertainty. Except worse. Unlike a parole board—which could not reduce an imposed sentence until a defendant had served at least a third of that sentence, *see, e.g.*, *United States v. Berry*, 839 F.2d 1487, 1488 & n.1 (11th Cir. 1988)—sentencing courts need wait only 30 days after imposing a sentence before granting a Section 3582(c)(1)(A) reduction, *see* 18 U.S.C. § 3582(c)(1)(A). More concerning, sentencing courts are not bound by even the statutory minimums when granting Section 3582(c)(1)(A) motions.

Bryant's motion here proves our point. His main argument is that his sentence is now unjust because of a recent, non-retroactive sentencing change. In essence, he argues that a congressional decision to make a sentencing change prospective-only creates an extraordinary and compelling reason that allows district courts to apply that change retroactively. The Fourth Circuit accepts that argument, *McCoy*, 981

25

F.3d at 285–87; the Sixth Circuit does not, *United States v. Tomes*, 990 F.3d 500, 504–05 (6th Cir. 2021); the Tenth Circuit attempts a middle way, *McGee*, No. 20-5047, slip op. at *19–24. Some district courts might grant relief on that basis; surely, others would not. Disparity and uncertainty follow from adopting an interpretation of "applicable" that rejects 1B1.13 as an applicable policy statement.

Of course, "purpose … cannot be used to contradict the text or to supplement it." *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (quoting Scalia & Garner, *Reading Law* §2, at 57). We must not "engage in purpose-driven statutory interpretation," *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1347 (11th Cir. 2014) (internal quotation marks and citation omitted), or "the familiar tactic of substituting the purpose of the statute for its text, freeing the Court to write a different [guideline] that achieves the same purpose," *Rapanos v. United States*, 547 U.S. 715, 755 (2006). But a statute's purpose, which itself must be derived from the text, is a constituent of meaning and can be helpful in understanding the "ordinary, contemporary, common meaning" of the statute's language. *United States v. Haun*, 494 F.3d 1006, 1009 (11th Cir. 2007) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). If the text could be read more than one way when considered in a vacuum, a statute's purpose may reveal which reading is correct. And a textually permissible interpretation that does not frustrate a statute's purpose is preferred over

26

one that does. Here, the statute's purpose supports our reading, even though it could not alone justify it.

### 4. Other considerations

Last, other general canons of statutory interpretation also bolster the understanding of 1B1.13 as an applicable policy statement for all Section 3582(c)(1)(A) motions, regardless of who files them. We discuss three here.

First and most obviously, 1B1.13's title is "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)." Titles are "permissible indicators of meaning." *United States v. Henry*, 968 F.3d 1276, 1283 (11th Cir. 2020) (quoting Scalia & Garner, *Reading Law* § 35, at 221); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998). And 1B1.13's title indicates that it is the policy statement for all Section 3582(c)(1)(A) motions.

Second, we presume that the same words will be interpreted the same way in the same statute. Even if a particular case makes "a bifurcated construction of [a] word [tempting], in the long run, experience teaches that strict adherence to the … requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). Resisting the temptation to interpret the same word differently makes sense because we presume that Congress's "inclusion … of [that] language is intentional and purposeful." *United States v. Perez*, 366 F.3d 1178, 1182 (11th Cir. 2004). And

27

"[w]e have even stronger cause to construe a *single*" use of a phrase "the same way each time it is called into play." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). We must "refuse to adopt a construction that would attribute different meanings to the same phrase in the same sentence, depending on which object it is modifying." *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 329 (2000).

Applying these principles, we should not interpret "applicable policy statement" in a way that gives "extraordinary and compelling"—which is only used in the statute once—different meanings depending on who files a motion. *Cf. Shkambi*, No. 20-40543, slip op. at *8–9 ("It's true that application note 1 defines 'extraordinary and compelling reasons' by articulating four categories of reasons that could warrant a sentence reduction."). "In all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1512 (2019). And this case does not present one of those "most unusual situations." On the contrary, nothing in the statute, policy statement, or common sense suggests that "what should be considered extraordinary and compelling reasons for [a] sentence reduction," 28 U.S.C. § 994(t), might vary depending on whether a defendant files a reduction motion for himself or whether the BOP files a motion on his behalf.

Third, when interpreting statutes, what Congress chose not to change can be as important as what it chose to change. We recognize that a statute's text often

28

"reflect[s] hard-fought compromises." *Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986). Here, in the FSA, Congress chose to expand who can file a Section 3582(c)(1)(A) motion, but it chose not to lift its stricture that courts must follow the Commission's applicable policy statements when ruling on those motions. It also chose not to amend its mandate that the Commission publish policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction" under Section 3582(c)(1)(A). 28 U.S.C. § 994(t); *see also* 28 U.S.C. § 994(a)(2)(C). It even chose not to grant the Commission emergency authority to amend 1B1.13. *Compare* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (granting no emergency amendment authority), *with* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 8, 124 Stat. 2372, 2374 (2010) (ordering the Commission to amend the Guidelines to "achieve consistency" with the new law within 90 days and granting the Commission "emergency authority" to do so). We presume that congressional inaction is intentional, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009), and that Congress made a "determined choice," *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990), that the Commission, not courts, would continue to establish what reasons were extraordinary and compelling for Section 3582(c)(1)(A) motions.

Congress also made these limited amendments in the knowledge that 1B1.13 was the "applicable" policy statement. *See United States v. Phillips*, 19 F.3d 1565,

29

1581 (1994) ("Congress is presumed to be knowledgeable about existing case law pertinent to any legislation it enacts."). Before the FSA, the Commission had said that the policy statement was its effort to comply with its statutory obligation to define the circumstances that could warrant a sentence reduction under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018) (Title: "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)"). And, by the time of the FSA, this Court had specifically described 1B1.13 as the "policy statement explaining [when] 'extraordinary and compelling reasons' exist." *Orlansky v. FCI Mia. Warden*, 754 F. App'x 862, 865 (11th Cir. 2018). Other courts had also described 1B1.13 as the Commission's "policy statement on § 3582(c)(1)(A) sentence reductions," *Totaro v. Warden Fort Dix FCI*, 742 F. App'x 596, 597 (3d Cir. 2018), and "the policy statement that governs [Section 3582(c)(1)(A)] reductions [and] lists circumstances that qualify as extraordinary and compelling under § 3582(c)(1)(A)." *United States v. Berberena*, 694 F.3d 514, 521–22 n.10 (3d Cir. 2012). Knowing all this, Congress chose not to redefine that phrase, change the substantive standard for granting a motion, or modify a district court's obligation to follow the policy statement. If Congress had meant to free district courts from following the Commission's guidance for defendant-filed motions, "we

30

would expect the text … to say so." *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S.Ct. 1938, 1947 (2016).

### 5. *Our Sister Circuits' Errors*

Despite the ordinary meaning of the word "applicable," the normal way in which courts identify applicable sentencing guidelines, and the drumbeat of authority that 1B1.13 controls all motions under Section 3582(c)(1)(A), many of our sister circuits have held to the contrary. They have done so, we believe, because of two errors.

First, our sister circuits have misinterpreted the prefatory phrase of 1B1.13, which begins with "[u]pon motion of the Director of the Bureau of Prisons," and the repetition of that clause in Application Note 4. *Brooker*, 976 F.3d at 235–36; *McCoy*, 981 F.3d at 282; *Shkambi*, No. 20-40543, slip op. at *8–9; *Jones*, 980 F.3d at 1109–10; *Gunn*, 980 F.3d at 1180; *Aruda*, No. 20-10245, slip op. at *11. "[O]ur interpretation of the Sentencing Guidelines is governed by traditional rules of statutory construction." *United States v. Lange*, 862 F.3d 1290, 1294 (11th Cir. 2017). And, as a general matter, "a prefatory clause does not limit or expand the scope of the operative clause." *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008). Instead, "operative provisions should be given effect as operative provisions, and prologues as prologues." *Id.* at 579 n.3.

31

Here, these provisions are prologue. The prefatory part of the policy statement orients the reader by paraphrasing the statute as it existed at the time the policy statement was enacted. But the important operative provisions of the policy statement are found in the application notes. *See Stinson v. United States*, 508 U.S. 36, 43 (1993) (commentary and a policy statement are "legal equivalent[s]"). Those notes define "extraordinary and compelling reasons" as being medical, age, family, or "other reasons." And they operate independently of the prefatory clause that has caused so much confusion in our sister circuits.

Similarly, the repetition of this phrase in Application Note 4 performs a prefatory, not operative function. Indeed, none of Application Note 4 has an operative effect; it is merely the Commission's suggestion to the BOP to file more motions. U.S.S.G. App. C, Amend. 799 at 136-37 (Reason for Amendment) (effective Nov. 1, 2016). That note "encourages the Director of the Bureau of Prisons to file" a motion "if the defendant meets any of the circumstances set forth in Application Note 1." U.S.S.G. § 1B1.13 cmt. n.4. As the Commission has said, this "commentary [was] intended to encourage the [BOP Director] … to file a motion under section 3582(c)(1)(A) when the criteria in this policy statement are met" U.S.S.G. App. C, Amend. 799 at 136-37 (Reason for Amendment) (effective Nov. 1, 2016). When the application note was published, the Commission reasoned that "[w]hile only the Director of the Bureau of Prisons has the statutory authority to file

32

a motion for compassionate release, … 'the court is in a unique position to assess whether … the criteria set forth in this policy statement'" have been met. *Id.* To that end, Application Note 4 begins with the then-existing statutory limitations: "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." Read in context, that language explains why it was (and still is) important for the BOP to file more motions; it does not limit the operative provisions of the policy statement to motions filed by the BOP.

It is telling that our sister circuits can give these clauses an operative meaning only by retconning them. It is "a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time" of enactment. *Oliveira*, 139 S.Ct. at 539 (cleaned up). But our sister circuits expressly interpret 1B1.13's language anachronistically instead of consistently with its ordinary meaning when the Commission published it. *See, e.g.*, *Brooker*, 976 F.3d at 236; *Shkambi*, No. 20-40543, slip op. at *8. When the Commission published 1B1.13, there was no such thing as a defendant-filed motion under Section 3582(c)(1)(A). As a procedural matter, only the BOP could file that reduction motion. It therefore makes very little sense to say that the policy statement distinguishes between a BOP-filed motion and some other kind of motion that did not exist when the policy statement was adopted. *Cf. Maumau*, No. 20-4056, slip op.

33

at 26 n.5 (conceding that when the policy statement said that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)," it was "address[ing] the procedural aspects of the compassionate release statute as they existed prior to the First Step Act").

Second, our sister circuits make several purposivist points. They note that the Commission lacks a quorum and expect it to change the policy statement when it can. *Brooker*, 976 F.3d at 234; *McCoy*, 981 F.3d at 282–84 & n.6; *Jones*, 980 F.3d at 1111 n.20; *Gunn*, 980 F.3d at 1180–81; *Aruda*, No. 20-10245, slip op. at *8 & n.1; *Maumau*, No. 20-4056, slip op. at *26 (premising its refusal to recognize 1B1.13 as an applicable policy statement on "the Sentencing Commission's [failure] to fulfil its statutory duty to issue a post-First Step Act policy statement"). They also note that Congress amended the statute to expand the use of Section 3582(c)(1)(A) and lament that the unamended 1B1.13 does not allow enough expansion. *Brooker*, 976 F.3d at 233, 235; *McCoy*, 981 F.3d at 276; *Jones*, 980 F.3d at 1104–05, 1110; *Aruda*, No. 20-10245, slip op. at *11; *Maumau*, No. 20-4056, slip op. at *15–16. We recognize the intuitive pull of these concerns. But it is not our role to predict what the Sentencing Commission will do or what Congress wants it to do. Our role is to interpret the relevant legal texts and apply them as they exist. *See Wis. Cent. Ltd. v.*

*United States*, 138 S.Ct. 2067, 2074 (2018) ("[I]t's a judge's job only to apply, not revise or update, the terms.").

There is always a lag time between a statutory change and guideline amendments. Amendments cannot take effect until six months after they are submitted to Congress. *Dorsey v. United States*, 567 U.S. 260, 293 n.2 (2012) (Scalia, J., dissenting) (quoting 28 U.S.C. § 994(p)). And they can only be submitted between "the beginning of a regular session of Congress" and the first day of May. *Id.* But, as a general rule, we do not throw out an entire guideline after a statutory change—we continue to apply it except to the extent that specific parts have been preempted by the new statute. *See United States v. Moriarty*, 429 F.3d 1012, 1024 & nn.10, 11 (11th Cir. 2005); *cf. United States v. LaBonte*, 520 U.S. 751, 753, 755–57 (1997) (requiring only that the inconsistent commentary be read consistently with the statute, not that the entire career-offender guideline have no effect until revised).

We are also not convinced that our interpretation frustrates Congress's goal of broadening the reach of Section 3582(c)(1)(A). In enacting the FSA, congressional critics of the existing law did not argue that 1B1.13's criteria were too narrow or that courts should be able to identify "extraordinary and compelling reasons" for themselves. Instead, the critics' concern was that the "BOP [was] not fulfilling its role" because it was not filing Section 3582(c)(1)(A) motions "based on the recently revised guidance issued by the U.S. Sentencing Commission." Letter

35

from 12 U.S. Senators to Deputy Attorney General J. Rod Rosenstein and Acting Bureau of Prisons Director Dr. Thomas R. Kane (Aug. 3, 2017). By allowing defendants to file reduction motions, Congress has significantly increased the statute's use. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (titling the Section 3582(c)(1)(A) amendments "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE"). According to a recent Sentencing Commission report, the number of Section 3582(c)(1)(A) motions granted *consistent with the 1B1.13 criteria* increased fivefold in the year following the FSA's enactment. U.S. Sent'g Comm'n, The First Step Act of 2018: One Year of Implementation 47–49 (August 2020). And defendants filed two-thirds of those motions. *Id.* at 47.

### *6. Our Dissenting Colleague's Arguments*

Our dissenting colleague sees things differently for reasons that we find unconvincing. We have addressed most of these points already. But there are three that warrant emphasis.

First, although our dissenting colleague quibbles with our definition of "applicable," she offers no alternative definition of her own. Instead, our dissenting colleague says that the policy statement tells us when it is applicable. The circularity of that position notwithstanding, we do not read the policy statement the same way. As explained above, we do not understand the policy statement to have limited its

own applicability or, more specifically, to have limited the applicability of its operative provisions, which define the universe of extraordinary and compelling reasons that can justify a sentence reduction. To the extent the policy statement addresses its application, it says that sentencing reductions under Section 3582(c)(1)(A) must be "consistent with *this* policy statement." U.S.S.G. § 1B1.13(3) (emphasis added). And, of course, the policy statement does not define "applicable" in the context of Section 3582(c)(1)(A), which would not be something the Commission would have authority to do anyway.

Second, as already addressed above, our dissenting colleague's reading of the policy statement ignores the mandate that we must interpret the statement based on the ordinary meaning of its text when it was enacted. *Wis. Cent. Ltd.*, 138 S.Ct. at 2074. Specifically, our dissenting colleague argues that the prefatory phrases can no longer be interpreted as prefatory phrases because they could, now, be interpreted as operative in light of the FSA's changes. But if they were prefatory when 1B1.13 was published, they are still prefatory today. It is "a fundamental canon of statutory construction" that we must derive the meaning of the guideline from the time that it was adopted, not from an anachronistic interpretation of the text. *See New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 539 (2019). There is nothing purposivist about understanding the policy statement based on what it meant when the Commission adopted it.

37

Third, our dissenting colleague argues that we are "blue-pencil[ing]" the policy statement by holding that it is "applicable" to defendant-filed motions. We disagree. We not severing anything from, or adding anything to, the policy statement. Instead, we are recognizing that district courts are bound by the Commission's definition of "extraordinary and compelling reasons" found in 1B1.13 because, under our understanding of the statute, Congress said they are. That means that courts may grant defendant-filed motions that the BOP refuses to bring, but they must apply 1B1.13's definition of "extraordinary and compelling reasons" in doing so.

*      *      *

In short, we hold that 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13.

### B. Section 1B1.13, Application Note 1(D)

Because we conclude that 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions, we must reach the second question: How does the policy statement apply to Bryant's request for a sentence reduction? There is no dispute that Bryant does not fit within the circumstances established by Application

38

Notes 1(A), (B), or (C), which concern medical, age, and family circumstances. Because he argues that he fits within Application Note 1(D), that is where we turn.

Application Note 1(D) states, "Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Bryant's main argument is that the FSA preempts this application note because it conditions the "other reasons" that can be extraordinary and compelling on a BOP determination. That conflict, according to Bryant, should be resolved by striking the first clause of the sentence, allowing district courts to define the "other reasons" mentioned in Application Note 1(D). Accordingly, he argues that we should remand for the district court to consider whether his reasons—primarily, the purported unfairness of his sentence—are extraordinary and compelling.

Policy statements and commentary in the Guidelines are not binding on federal courts if they "violate[] … a federal statute." *Stinson v. United States*, 508 U.S. 36, 38, 45 (1993). If a policy statement "is at odds" with a federal statute, it must "bow to the specific directives of Congress," and the conflicting portion "must give way" to the statutory directive. *United States v. LaBonte*, 520 U.S. 751, 757 (1997). When Congress amended Section 3582(c)(1)(A) to allow defendants to file those motions, it rendered some of 1B1.13 inoperative. For instance, the first

39

sentence of Application Note 4 says "A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." That provision and the amended Section 3582(c)(1)(A) are mutually exclusive: They cannot possibly coexist. When that happens, we simply apply the statute, which trumps the policy statement.

The parties disagree about whether Application Note 1(D) "violates" or "is at odds" with Section 3582(c)(1)(A), and if so, what portion "must give way." *LaBonte*, 520 U.S. at 757; *Stinson*, 508 U.S. at 38. Bryant argues that Application Note 1(D) conflicts with the amended statute because the purpose of the amendment was to expand the use of Section 3582(c)(1)(A) by removing the BOP from its gatekeeper role and by allowing federal courts to grant relief even if the BOP disagreed. His solution is to strike only the phrase "[a]s determined by the Director of the [BOP]," ultimately granting courts the ability to determine "other reasons."

The government agrees that the FSA removed the BOP's exclusive authority over filing Section 3582(c)(1)(A) motions. But there the agreement ends. The government responds that the FSA did not change the Commission's definition of extraordinary and compelling nor did it shift authority from the Commission to the courts to define that phrase. In the government's view, by changing only who could file a reduction motion, the FSA simply expanded defendants' access to the courts. The government concludes that there is no inherent incompatibility between a

40

defendant-filed reduction motion and BOP input on what reasons not expressly listed in 1B1.13 can be extraordinary and compelling.

We agree with the government. Application Note 1(D) is not at odds with the amended Section 3582(c)(1)(A). We cannot replace the phrase "[a]s determined by the Director of the [BOP]" with "as determined by a district court."

Application Note 1(D) does not conflict with Section 3582(c)(1)(A). The FSA's only change was to allow for defendant-filed reduction motions. Nothing in Application Note 1(D) stops a defendant from filing a Section 3582(c)(1)(A) motion. The BOP may still file motions, and Application Note 1(D) can apply to those motions. The BOP can also take a position on a defendant-filed motion, so Application Note 1(D) has a field of application there as well. *Cf. Gunn*, 980 F.3d at 1180 ("It is true that a judge acting on a prisoner's motion may lack the advice of the Director, contemplated by Application Note 1(D), about whether some novel 'extraordinary and compelling reason' exists. Yet the First Step Act does not muzzle the Director … ."). Because this Court can give effect to the amended Section 3582(c)(1)(A) and the unamended Application Note 1(D) at the same time, the Court must do so. *See McCarthan v. Dir. of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1090 (11th Cir. 2017) (en banc) ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously." (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: An*

41

*Interpretation of Legal Texts* 180 (2012)); *cf. Helvering v. Credit All. Co.*, 316 U.S. 107, 112 (1942) ("We should, of course, read the two sections as consistent rather than conflicting, if that be possible.").

Additionally, Application Note 1(D) is consistent with Congress's purpose in passing the FSA. As in all cases of statutory interpretation, "the purpose must be derived from the text." Scalia & Garner, *Reading Law* § 2, at 56; *see United States v. Tigua*, 963 F.3d 1138, 1142 (11th Cir. 2020). As we have already explained, the FSA did not give courts the freedom to define "extraordinary and compelling reasons." It expanded access to the courts for adjudicating motions under existing criteria. In other words, the policy problem that the FSA aimed to solve was not the courts' inability to identify new grounds for relief; rather, the problem was that the BOP was not filing reduction motions for defendants who qualified under the already existing grounds for relief—the Commission's criteria set forth in 1B1.13. Allowing defendants to file Section 3582(c)(1)(A) motions ensures that courts can grant reductions to defendants who fall within the Commission's criteria. And, as previously demonstrated, that change has accomplished Congress's goal of increased use.

It is true that Application Note 1(D) allows the BOP some input in Section 3582(c)(1)(A) motions. But nothing in the FSA suggests that Congress stripped the

BOP of any role in Section 3582(c)(1)(A) proceedings. Two considerations make that clear.

First, in adding a clause allowing defendants to file Section 3582(c)(1)(A) motions, Congress also continued to allow the BOP to file those motions. 18 U.S.C. § 3582(c)(1)(A). Indeed, Congress required that defendants first submit their requests to the BOP and allow it the initial opportunity to file the Section 3582(c)(1)(A) motion. *Id.*

Second, Section 603(b) of the FSA actually expands the BOP's role in Section 3582(c)(1)(A) proceedings. It requires the BOP to notify prisoners who may qualify for a reduction under Section 3582(c)(1)(A) of its availability. 18 U.S.C. § 3582(d). It even requires the BOP to "assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A)." *Id.*

This Court can and should give effect to the amended Section 3582(c)(1)(A) and the unamended Application Note 1(D).[6] There is no inherent incompatibility

---

[6] Some, including our dissenting colleague, have argued that a sub-delegation of the Commission's power to define extraordinary and compelling reasons to the BOP may be a problem as a matter of administrative law. *See also Ruffin*, 978 F.3d at 1007–08. If this position were correct, it seems to us that the entire application note would fall as an improper sub-delegation, which would not help Bryant here. But we do not address this question because no party has sufficiently raised that argument. Although Bryant's brief mentioned that an agency cannot delegate a power that it does not have, that comment was in the context of his argument that the FSA altered the BOP's role such that courts should now define "other reasons." That is not enough to place the sub-delegation issue before this Court. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2018) ("[A]n

between a defendant filing a Section 3582(c)(1)(A) motion and the BOP determining which reasons outside of those explicitly delineated by the Commission are extraordinary and compelling. Because Bryant's motion does not fall within any of the reasons that 1B1.13 identifies as "extraordinary and compelling," the district court correctly denied his motion for a reduction of his sentence.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

appellant[] simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."). Because no party has "plainly and prominently raised" the sub-delegation issue, "for instance by devoting a discrete section of his argument to that claim," it has not been adequately briefed. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (cleaned up). We cannot evaluate the merits of that administrative law issue in this appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("If an argument is not fully briefed … to the Circuit Court, evaluating its merits would be improper."); *see also Sapuppo*, 739 F.3d at 682 ("Abandonment of an issue can also occur when passing references appear in the argument section of an opening brief, particularly when the references are mere 'background' to the appellant's main arguments or when they are 'buried' within those arguments.").

MARTIN, Circuit Judge, dissenting:

Today's majority opinion establishes the Eleventh Circuit as the only circuit to limit an inmate's ability to get compassionate release from incarceration solely to those "extraordinary and compelling" reasons that are pre-approved by the Bureau of Prisons ("BOP").  Our precedent now allows no independent or individualized consideration by a federal judge as plainly intended by the First Step Act.  And this limitation on compassionate release is based on an outdated policy statement from a Sentencing Commission that has lacked a quorum since the First Step Act became law.[1]  The problems that arise from the majority's reliance on the outdated policy statement are compounded by the majority's express decision to strike (or ignore) language from the policy statement.  Sadly, this result reinstates the exact problem the First Step Act was intended to remedy: compassionate release decisions had been left under the control of a government agency that showed no interest in properly administering it.  With all respect due, I dissent.

---

[1] The First Step Act was signed into law on December 21, 2018.  The last meeting of the U.S. Sentencing Commission to convene with a quorum was held on December 13, 2018.  This means the Commission has not met with a quorum since the enactment of the First Step Act.  During the entire life of the First Step Act, the Commission has therefore been without authority to make revisions to the U.S. Sentencing Guidelines, the commentary to those guidelines, or the policy statements related to those guidelines to effectuate the First Step Act.

45

## I.    FACTUAL BACKGROUND

Thomas Bryant is currently serving a 49-year sentence for offenses that netted him $21,600 over three years, with no identifiable victims associated.[2]  Mr. Bryant, who still has more than a quarter of a century to serve on this sentence, would be in his eighties by the time he is released.  Meanwhile, those of his co-defendants who pled guilty all re-entered society by 2008.  Also of note, Mr. Bryant's lengthy sentence is the result of the government's decision to "stack" his firearm offenses.  By this I mean, it charged two 18 U.S.C. § 924(c)(1) offenses in the same indictment, which resulted in required consecutive sentences for those charges.  Specifically, it is as a result of this charging decision that Mr. Bryant was subject to what was then a mandatory consecutive 20-year penalty.  Today, the law does not permit the type of "stacked" sentence Mr. Bryant received when there are two firearm charges in the same criminal proceeding.  See First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22 (codified at 18 U.S.C. § 924(c)).  Consecutively imposed sentences for firearm violations are now only allowed for defendants who have a separate conviction for firearm use, i.e., from an earlier event.

---

[2] The crimes for which Mr. Bryant was convicted are not at all relevant to the straightforward interpretive question before us.  But I understand the majority opinion to comment on Mr. Bryant's moral character.  See Maj. Op. at 1, 4 (stating that Mr. Bryant is "corrupt," that he "flout[ed]" the law, and that his "duplicity begets duplicity").  In the face of those statements, I provide details of Mr. Bryant's offenses and penalties not found in the majority opinion.

46

Despite the fact that Mr. Bryant may well die in prison given the length of his sentence, he has devoted significant effort to rehabilitating himself during the 22 years he already spent behind bars.  He completed over 19 years of education courses, worked in UNICOR Industries for 15 years, and teaches other prisoners music theory and creative writing.  A number of people support his release, including his family, his pastor, and several BOP staff members.

## II.    STATUTORY BACKGROUND

In 2018, Congress enacted the First Step Act which, among other things, transformed the process of moving for and adjudicating compassionate release motions.  Before passage of the Act, it was only the BOP Director who had authority to file a motion seeking reduction of a prisoner's sentence, and only "extraordinary and compelling reasons" could "warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i) (2012).  Upon passage of the Act, federal district judges now have authority to reduce a sentence that is no longer dependent on BOP's decision to ask for it.  The Act now allows courts to consider motions filed by defendants themselves, once that defendant has exhausted his administrative remedies or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)).

Congress enacted this reform following two damning Department of Justice Inspector General ("DOJ IG") reports that documented BOP's utter failure to administer a meaningful compassionate release program. See U.S. Dep't of Justice Office of the Inspector Gen., The Federal Bureau of Prisons' Compassionate Release Program (2013), https://oig.justice.gov/reports/2013/e1306.pdf; U.S. Dep't of Justice Office of the Inspector Gen., The Impact of an Aging Inmate Population on the Federal Bureau of Prisons (2016), https://oig.justice.gov/reports/2015/e1505.pdf. The DOJ IG found that BOP did not set consistent criteria, did not inform prisoners about the program, and did not track requests. The Federal Bureau of Prisons' Compassionate Release Program at i–iv. The DOJ IG found that from the nation's entire federal inmate population, only 24 people per year were released on BOP's motion. Id. at 1. Of the people whose release requests were approved by both a warden and a BOP Regional Director, 13% died while waiting for final approval from the BOP Director. Id. at 11. Moreover, the second report spelled out that BOP failed to implement Congress's command on compassionate release, even at significant financial cost to itself. The Impact of an Aging Inmate Population on the Federal Bureau of Prisons at iii.

The First Step Act took away BOP's solitary control over this gatekeeping function but left the Sentencing Commission with the authority to describe what

"extraordinary and compelling" reasons might warrant a sentence reduction.  See

28 U.S.C. § 994(t).  The Commission has been unable to update its commentary on

what constitutes "extraordinary and compelling" reasons since 2018 because, as I

mentioned, it has lacked a quorum since that time.  The Commission currently has

only <u>one</u> voting member and it would need seven to act.[3]

### III.     PROCEDURAL BACKGROUND

In August 2019, Mr. Bryant first filed an administrative remedy with the

warden of his prison seeking compassionate release.  When the warden did not

respond within 30 days, Mr. Bryant filed a motion for compassionate release.  He

argued that three grounds, in combination, constituted "extraordinary and

compelling reasons" for a reduction of his sentence.  First, Mr. Bryant argued that

if he were sentenced today, his sentence would be considerably shorter because the

First Step Act did away with the long consecutive sentence for stacked § 924(c)

charges and specified that "stacking" would not be allowed in cases like his.

---

[3] <u>See</u> U.S. Sentencing Comm'n, 2018 Annual Report 2–3 (2019) ("[A]s of the second quarter of fiscal year 2019, Judge Breyer and Judge Reeves are the only voting members of the Commission."),     https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/2018-Annual-Report-and-Sourcebook.pdf;     U.S.     Sentencing Comm'n, 2019 Annual Report 3 (2020) ("Throughout much of fiscal year 2019 and into fiscal year 2020, the Commission has operated with only two voting commissioners . . . ."), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf; U.S. Sentencing Comm'n, 2020 Annual Report 2–3 (2021) ("Throughout much of FY 2020 and into FY 2021, the Commission operated with only two voting commissioners . . . . Judge Reeves's term, however, has since expired," leaving the Commission with a sole voting member), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/2020-Annual-Report.pdf.

Second, he argued that his long sentence was at least partially a form of punishment for asserting his Sixth Amendment right to trial, noting that he was subject to a sentencing enhancement as a result, and that his co-defendants who pled guilty have long been released from prison. Finally Mr. Bryant pointed to his glowing record of rehabilitation during his 22 years in prison.

The government opposed Mr. Bryant's motion, saying his stated reasons did not qualify him for compassionate release. Under the government's reading of United States Sentencing Guidelines § 1B1.13 Application Note 1(D) ("Application Note 1(D)"), the District Court was only allowed to entertain a defendant-filed compassionate release motion based on those extraordinary and compelling reasons enumerated in the policy statement of the Guidelines. But the government made no argument on the merits of whether Mr. Bryant's reasons were "extraordinary and compelling." In a one-page order, the District Court denied Mr. Bryant's motion "for the reasons stated in the Government's response in opposition" to the motion. Mr. Bryant timely appealed.

## IV.  DISCUSSION

Each of the <u>seven</u> circuits that has considered the issue[4] has held that the policy statement we consider here applies only to compassionate release motions

---

[4] I have not found even a dissenting or concurring opinion among any of the circuit opinions deciding this issue that advocates for what the majority does here. As I understand it, that means

filed by the BOP, as opposed to those filed by defendants on their own behalf.  See

United States v. Brooker, 976 F.3d 228, 235–36 (2d Cir. 2020); United States v.

McCoy, 981 F.3d 271, 275–77, 280–84 (4th Cir. 2020); United States v. Shkambi,

993 F.3d 388, 392–93 (5th Cir. 2021); United States v. Jones, 980 F.3d 1098,

1109–11 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir.

2020); United States v. Aruda, 993 F.3d 797, 799–802 (9th Cir. 2021) (per

curiam); United States v. McGee, 992 F.3d 1035, 1048–51 (10th Cir. 2021).[5]  I

agree.  Here, I will set out why I believe this reading given by the majority of

courts is the only plausible reading of the policy statement and why the majority's

interpretation is mistaken.  Then I will turn to why the majority opinion's

purposivist analysis misses the mark.

   A.  The Policy Statement Plainly Applies Only to Compassionate Release
       Motions Filed by the BOP Director

       The First Step Act changed the provisions governing compassionate release

of prisoners, as relevant to this appeal, to say the following:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to

my two colleagues in the majority are the only federal appellate court judges in the country to interpret the policy statement in the way they do here.

[5] Although the majority points to a recent Eighth Circuit decision as support for its conclusion, that Circuit expressly declined to reach the question relevant here, of whether § 1B1.13 continues to apply to compassionate-release motions filed after the passage of the First Step Act.  See United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); Maj. Op. at 19.  The decision today therefore remains alone among courts of appeals in the conclusion it reaches.

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i).

Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," but it otherwise asked the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). And, when adjudicating compassionate release motions, the district court must ensure that any sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The only policy statement the Sentencing Commission has issued that describes "extraordinary and compelling" states, in relevant part:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1)(A) Extraordinary and compelling reasons warrant the reduction.

USSG § 1B1.13(1)(A) (emphasis added). Then there is an application note following this policy statement that specifies "extraordinary and compelling reasons" exist when a defendant presents one of a set of medical, age-related, or

52

family circumstances, or: "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the specific reasons outlined in the application note.  USSG § 1B1.13 app. n.1(D) (emphasis added).

By its express terms, the policy statement applies only to motions brought by the Director of the BOP.  See Brooker, 976 F.3d at 235 ("Turning to the text of Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable." (emphasis added)); Jones, 980 F.3d at 1109 ("Examining the four corners of § 1B1.13 alone, it becomes immediately apparent that the policy statement does not wholly survive the First Step Act's promulgation." (emphasis added)).  Under the First Step Act defendants can now bring compassionate release motions on their own behalf, but it did not take away the BOP Director's longstanding ability to file these motions as well.  18 U.S.C. § 3582(c)(1)(A).  I say this means the policy statement at issue here survives insofar as it applies to those motions brought by BOP.  But BOP filed no motion here.  Mr. Bryant filed his own motion for compassionate release, so this policy statement, and accompanying application note, simply are not "applicable" to his motion.  See Gunn, 980 F.3d at 1180 ("[T]he Sentencing Commission has not yet issued a policy statement 'applicable' to" a motion brought by a defendant on his own behalf).

53

And here is what I think the majority gets wrong.  The majority says that, even though the policy statement expressly cabins itself to motions brought by the BOP Director, it is still an "applicable" policy statement.  And this has the effect of limiting federal judges from considering anything other than what the BOP considers an "extraordinary and compelling reason" justifying compassionate release.  Thus, the courts are confined to the footprint made by BOP.  And again, the First Step Act was meant to address BOP's poor record on allowing compassionate release.

In arriving at its ruling that the policy statement is "applicable" to even defendant-filed motions for compassionate release the majority relies primarily on dictionary definitions of the word "applicable."  The majority says the policy statement is "applicable" because that means it is "capable of being applied" and "relevant" to Mr. Bryant's motion.  Maj. Op. at 15–18.  And because the majority believes the § 1B1.13 policy statement applies to defendant-filed motions like Mr. Bryant's, courts are not allowed to decide, independent of the criteria set forth by BOP, whether extraordinary and compelling reasons exist.

This interpretation fails to persuade for several reasons.  First, the majority's dictionary-based theory about when a policy statement may be "applicable" flies in

the face of the statement's plain text that tells us when it is actually "applicable."[6]

See Shkambi, 993 F.3d at 392 ([T]he text of the commentary confirms the limited applicability of § 1B1.13 . . . . That note expressly limits the policy statement's applicability to motions filed by the BOP." (emphasis added)).  There is simply no need to rattle off dictionary definitions of "applicable," see Maj. Op. at 15–18 (listing several different definitions of "applicable"), when the policy statement itself tell us when it applies.

Second, the majority's definitional argument proves too much, and at the same time, too little.  Under the majority's theory, any policy statement (on any subject) that is "capable of being applied" would be "applicable," without regard to the Sentencing Commission's purpose in promulgating the policy to begin with. For example, assume the Commission issues a policy statement tomorrow, saying it "applied only to motions filed by the BOP director," and also explicitly saying that courts are to adjudicate what counts as "extraordinary and compelling" for defendant-filed motions independently of the views of the BOP director.  Under the majority's theory, because even this policy statement is still "capable of being applied" to motions filed by defendants, judges would still be confined to the BOP criteria.  Also, the fact that a policy statement may offer "relevant" guidance does

---

[6] For the same reason, the majority's argument based on the title of the statement is of no moment. Maj. Op. at 21.  The general title does not override the specific language of the policy statement.

55

not make the statement binding.  For example, it is quite common for courts to look to other provisions in a statute to determine whether a word or phrase can be interpreted to have a consistent meaning throughout and to give meaning to varying language within a statute.  See In re Failla, 838 F.3d 1170, 1176–77 (11th Cir. 2016) ("The presumption of consistent usage instructs that a word or phrase is presumed to bear the same meaning throughout a text and that a material variation in terms suggests a variation in meaning." (quotation marks omitted and alteration adopted)).  Although other provisions may be "relevant," they would not necessarily be "applicable."

Third, in advancing its definitional argument, the majority asserts that "[t]here is no question that 1B1.13 is the policy statement the Commission adopted to comply with th[e] statutory mandate."  Maj. Op. at 20.  But again, the fact that the policy statement applies to some compassionate release motions doesn't mean it applies to them all.[7]  And it is worth remembering that, even absent a policy statement, federal judges have authority to adjudicate whether a defendant has offered "extraordinary and compelling" reasons warranting a sentence reduction.

---

[7] The majority's attempted textualist analysis of the language in other courts' opinions also fails.  Maj. Op. at 20–21.  First, the opinions the majority cites did not interpret whether the policy statement was "applicable" for the purposes of 18 U.S.C. § 3582(c)(1)(A).  And second, the fact that some courts find that the statement's substantive criteria offers guidance in interpreting "extraordinary and compelling" in some cases does not tell us whether the policy statement is binding as to motions filed by defendants.

The statute merely requires that courts' decisions on compassionate release motions be "consistent with" any applicable policy statement. 18 U.S.C. § 3582(c)(1)(A). As the Seventh Circuit put it, "'Consistent with' differs from 'authorized by.'" Gunn, 980 F.3d at 1180.

There is also the matter of fidelity to the text. I find it noteworthy that in insisting the policy statement is "applicable" to Mr. Bryant's motion, the majority has to blue-pencil the statement and application note to get around phrases that explicitly address the scope of the statement's applicability. Most obviously, there is the phrase "[u]pon motion of the Director of the Bureau of Prisons." USSG § 1B1.13. And the application note also specifies that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." USSG § 1B1.13 app. n.4 (emphasis added). Yet even in the face of these phrases, the majority tells us the limitations of the policy statement also apply to motions filed not by the BOP, but by the inmates.

The majority says its application of the policy statement to motions other than those filed by the Bureau of Prisons is okay because the phrases confining it to BOP motions are merely non-operative "prefatory phrases." Maj. Op. at 31–34. There are at least two errors with this analysis. First, turnabout is fair play. If these two phrases that conflict with the majority's interpretation can be dismissed as non-operative, prefatory phrases, then why isn't the same true of the phrase

"[a]s determined by the Director of the Bureau of Prisons" in Application Note

1(D)?  After all, if this language is merely non-operative and prefatory, then

federal judges could just as easily make the determination.  As the majority

recognizes, at the time the Sentencing Commission promulgated that note, the only

entity empowered to bring motions was the Director of the BOP.  Id. at 34.  That

being the case, saying that the BOP Director can determine what "other reasons"

are "extraordinary and compelling" puts no limit on what those reasons may be.

And this characteristic is shared by the other phrases the majority finds non-

operative.  The language only reflected the procedure provided for by "the statute

as it existed at the time the policy statement was enacted."  Id. at 32.  If we are

striking any prefatory language from the policy statement and application note,

shouldn't we strike it all?

Second, even if these phrases could have been characterized as prefatory

before enactment of the First Step Act, that characterization doesn't work now that

the First Step Act is law.  These phrases no longer "paraphras[e] the statute."  Id.

At least, not the whole statute.  Instead, the phrases still parallel the language in the

provision that empowers BOP to file compassionate release motions.  And it is to

that version of the statute that this statement applies.  The majority opinion turns a

blind eye to the impact of the First Step Act on the language of the policy

statement.  It says that Congress changed the language of the compassionate

58

release statement "in the knowledge that 1B1.13 was the 'applicable' policy statement." Id. at 30. But Congress also knew that the policy statement explicitly limited itself to motions filed by the BOP Director. The majority offers no reason to think that Congress intended for that policy statement to apply to the entirely new category of compassionate release motions allowed by the First Step Act.

In saying that the Commission could not possibly have intended to "distinguish[] between a BOP-filed motion and some other kind of motion that did not exist when the policy statement was adopted," the majority engages in the same type of "purposivist" analysis it criticizes our sister circuits for engaging in. See id. at 35–36. While of course the "purpose and context" of a statute or regulation remain relevant to our interpretive task, purpose and context cannot override the plain text of the statement. See id. at 26–27, 19.[8] See Bostock v. Clayton County, 590 U.S. __, 140 S. Ct. 1731, 1737 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.").

---

[8] It is perfectly plausible that the Sentencing Commission saw the need to give specific instructions to BOP about any motions for compassionate release it might file, since BOP has demonstrated neither the capacity nor the apparent willingness to recognize when extraordinary and compelling reasons warrant a sentence reduction. See generally The Federal Bureau of Prisons' Compassionate Release Program; The Impact of an Aging Inmate Population on the Federal Bureau of Prisons.

The majority's interpretation requires us to strike at least two phrases from the policy statement and accompanying application note. In contrast, the interpretation adopted by the Second, Fourth, Fifth, Sixth, Seventh, Ninth and Tenth Circuits "preserv[es] as much of § 1B1.13 that can be saved." Jones, 980 F.3d at 1111. The compassionate release statute plainly offers two vehicles for compassionate release: (1) motions brought by the BOP Director and (2) motions brought by defendants. The policy statement applies only to those brought by the BOP Director, which was the only vehicle in existence when it was written. Our interpretation ought to end there.

B. The Majority's Interpretation Results in an Unlawful Sub-Delegation of Authority to BOP

The majority's interpretation also turns a lawful application note into an unlawful one. Congress delegated the authority to determine the meaning of "extraordinary and compelling reasons" to the Sentencing Commission, not BOP. See 18 U.S.C. § 994(t). An agency cannot delegate to another agency powers that Congress did not give that second agency. Bayou Lawn & Landscape Servs. v. Sec'y of Labor, 713 F.3d 1080, 1084–85 (11th Cir. 2013) ("Even if it were not axiomatic that an agency's power to promulgate legislative regulations is limited to the authority delegate[d] to it by Congress, we would be hard-pressed to locate that power in one agency where it had been specifically and expressly delegated by Congress to a different agency." (citation omitted)).

60

Before the First Step Act, Application Note 1(D) effected no illegal sub-delegation because only BOP could file a compassionate release motion. The Application Note merely gave BOP discretion over its own motions. But now, reading the Application Note in line with the majority's interpretation, BOP is suddenly empowered to significantly restrain the universe of available "other reasons" for defendants seeking compassionate release on their <u>own</u> behalf. And Congress never gave BOP this authority. The Sentencing Commission is the only agency that can "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).[9] The Commission cannot lend this authority to the BOP Director any more than it can to the Administrator of the Environmental Protection Agency. Therefore, even if the majority's interpretation were correct, it would render Application Note 1(D) invalid. It would still not be binding as to Mr. Bryant's motion.

The majority says that "no party has raised" the issue of illegal sub-delegation in this case. Maj. Op. at 43–44 n.6. In so saying, the majority ignores Mr. Bryant's initial brief, which explicitly raised this argument. Appellant's Br. at 39–41. The majority's failure to address this issue cannot properly be blamed on Mr. Bryant.

---

[9] Of course, the courts can still adjudicate what constitutes "extraordinary and compelling reasons" absent guidance from the Sentencing Commission because the courts' decisions must be merely "consistent with" any applicable policy statement. 18 U.S.C. § 3582(c)(1)(A).

C. <u>The Majority's Purposivist Argument Is Misplaced</u>

The majority goes to great lengths to explain why its interpretation squares with the 1984 Sentencing Reform Act.  <u>See</u> Maj. Op. at 24–27.  But it does not explain the large regard it gives the purpose of this 1984 statute, in contrast with the little regard it gives to the purpose of the much more recent First Step Act.  After all, it is the First Step Act that gave rise to the interpretive questions Mr. Bryant's case presents to us today.  And even though we face questions brought on by enactment of the First Step Act, the majority explicitly criticizes our sister circuits for supporting their textualist analysis with a discussion of its purpose.  <u>Id.</u> at 34.  Nevertheless, the majority does the exact same thing, except it supports its analysis with a discussion of the purpose of the 1984 Act.

The majority characterizes the changes that the First Step Act brought to the compassionate release system as a rather minor procedural amendment.  <u>Id.</u> at 3–4.  But that ignores the transformational intent and purpose of the First Step Act, the "most meaningful criminal-justice reform at the federal level in decades."  Brief of the American Conservative Union Foundation Nolan Center for Justice; the Cato Institute; Arthur Rizer; R Street Institute; and Brett Tolman as Amici Curiae Supporting Appellant and Reversal at 4.

First, the majority ignores that the Sentencing Reform Act, in abolishing the federal parole system, and the First Step Act, in eliminating BOP's gatekeeping

function over compassionate release, in fact advanced a common goal: keeping sentencing "within the province of the judiciary." S. Rep. No. 98-225, at 54 (1983) (emphasis added). And it is hardly surprising that the First Step Act would prefer that the courts make compassionate release determinations without unnecessary intervention by BOP, given that agency's failure to "properly manage the compassionate release program." The Federal Bureau of Prisons' Compassionate Release Program at 11.

Second, the First Step Act empowers defendants to seek compassionate release not only when BOP does not act quickly enough on the defendant's request, but also when BOP altogether refuses to act. See 18 U.S.C. § 3582(c)(1)(A). That tells us that Congress was concerned not only with BOP's ability to timely review compassionate release requests, but also with its substantive judgment about what circumstances warrant compassionate release. Reading the policy statement as the majority does re-inserts BOP into the process of establishing substantive criteria for compassionate release, thus undermining Congress's intent.

To the extent the majority shares the government's policy concerns about granting district courts "unfettered discretion" and fears about inconsistent sentence reduction outcomes, those concerns are vastly overstated. Judges are not given "unfettered" discretion. To the contrary, they are charged with finding

63

whether there are "extraordinary and compelling" reasons warranting sentence reduction. See 18 U.S.C. § 3582(c)(1)(A). And not just any reason will do. As the Seventh Circuit points out, "extraordinary and compelling" is hardly the type of standard that invites "a sort of Wild West in court." Gunn, 980 F.3d at 1180. And, of course, this Court routinely uses its appellate jurisdiction to reverse district courts it perceives to have exceeded statutory bounds. The Sentencing Commission is also empowered to provide more detailed guidance to courts about what circumstances warrant compassionate release, but it has not done so.

The majority opinion is also noteworthy in that it expresses concerns about disparities in sentencing only as to sentences being reduced too much. When a court becomes too "compassionate" toward criminal defendants the issue of disparity then warrants attention. As Mr. Bryant rightfully points out, the government, and today, the majority opinion, express no concerns "about arbitrary outcomes and unwarranted sentencing disparities created by federal prosecutors." And Mr. Bryant's case presents a powerful example of how the amended compassionate release statute could be applied to correct patent disparities among defendants who engaged in the same conduct. Mr. Bryant was sentenced to a term just shy of five decades—a term that far exceeded those of his co-conspirators who pled guilty—in part because he exercised his Sixth Amendment right to trial and because he was subject to a mandatory penalty for "stacked" firearm offenses that

64

Congress has since drastically lowered.[10]  A number of his co-defendants, involved in the exact same scheme, re-entered society more than a decade ago.  I view this disparity as worthy of concern—and a second look under the compassionate release statute.

Mr. Bryant has already served decades in prison.  Even with the knowledge that he may never be allowed to re-enter society, he has devoted significant efforts to rehabilitate himself.  The majority opinion defies the text of the First Step Act and the policy statement and undermines the monumental efforts Congress undertook to transform compassionate release.  I fear the majority opinion today sets our Court on a path, alone among Courts of Appeal, that will deprive Mr. Bryant and thousands like him in the states of Georgia, Florida, and Alabama of access to compassionate release.

For these reasons, I dissent.

---

[10] And the fact that Congress did not decide to make every defendant sentenced to stacked § 924(c) offenses categorically eligible for retroactive sentencing relief does not mean that the change to § 924(c) cannot, in combination with other factors, give rise to extraordinary and compelling reasons warranting a sentence reduction.