[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12980

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JESSE HOWARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:93-cr-00123-DMM-3

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Jesse Howard, a federal prisoner, filed his original motion for compassionate release *pro se* but was thereafter represented by counsel. He appeals the district court's denial of his motion for reconsideration of the denial of his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He argues that the court abused its discretion by failing to consider his medical conditions apart from his susceptibility to coronavirus. He also argues that the court abused its discretion by failing to properly consider the 18 U.S.C. § 3553(a) factors and erroneously determining that he was a danger to the community. After review of the record and applicable law, we affirm.

## I

In 1994, Mr. Howard was charged with conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count 1); using firearms and silencers during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count 2); possessing a machine gun in violation of 18 U.S.C. § 922(o)(1) (Count 3); possessing a machine gun, firearms, and silencers as a convicted felon in violation of §§ 922(g)(1), 924(a)(2) (Count 5); and possessing unregistered firearms in violation of 26 U.S.C. § 5861

(Count 9). Mr. Howard proceeded to trial with several codefendants and was convicted of Counts 1, 2, 5, and 9.[1]

The presentence investigation report (PSI) set out the relevant facts. A special agent, in an undercover capacity, was introduced to a Jamaican gang leader as well as Mr. Howard and one other man. The agent asked the group if they would be interested in "ripping off" an incoming shipment of cocaine in an armed robbery. Mr. Howard and the group agreed. Mr. Howard and three other men, including Winston Griffiths, arrived at the specified meeting place, and Mr. Howard told the agent he was ready. The agent told one of the other men that he could not ride with them in their car because he would be recognized. Mr. Howard and the men, besides Mr. Griffiths, advised the agent that he did not need to worry about that because they were prepared to kill everyone related to the cocaine shipment and leave no witnesses.

The gang leader arrived and told the agent that he had enough guns and bullets for the job. The agent instructed the men to follow him to the location of a van. Once there, Mr. Howard informed the agent that they intended to kill everyone during the robbery because the victims would be able to identify them. After more men arrived, the agent observed them removing guns from a hidden compartment. The men were then arrested, and agents

---

[1] The PSI did not mention Count 9, likely because Mr. Howard was sentenced on Count 9 in a separate judgment, as evidenced by the docket entries for his two judgments. *See* D.E. 347, 361.

found multiple firearms and silencers in their cars. The PSI also reported that Mr. Howard had prior firearms offenses and that Mr. Griffiths appeared to be the least culpable member of the group because he appeared only on the last day.

The district court imposed a total sentence of 720 months' imprisonment. It later granted Mr. Howard's motion to modify the terms of his imprisonment pursuant to 18 U.S.C. § 3582(c)(2), reducing his total sentence to 684 months' imprisonment.

In July 2020, Mr. Howard moved, *pro se*, for compassionate release or a sentencing modification pursuant to § 3582(c)(1)(A)(i). He argued that he had been incarcerated for more than twenty-five years, was looking at twenty-five more, and was facing the possibility of dying in prison for a robbery that never took place or resulted in any injuries or deaths. Mr. Howard explained that he was getting older and that he had overcome cancer, suffered from seizures, and undergone many surgeries while incarcerated. He asserted that because his health was so compromised, there was no possibility that he would commit further offenses. He also claimed that he did not pose a danger to the community because he would be subject to deportation upon his release.

The government responded that the district court should deny the motion either because Mr. Howard had not established extraordinary and compelling reasons or because he would pose a danger to the community. The government argued that Mr. Howard's cancer was in remission, his last seizure occurred in 2017, and his stage 2 chronic kidney disease was mild. The mere existence of

21-12980                Opinion of the Court                5

the coronavirus pandemic could not provide a basis for a sentence reduction, and none of his medical conditions had been identified by the CDC as increasing the risk from Covid-19.  It also noted that Mr. Howard had said that he was prepared to kill witnesses related to the cocaine shipment, and that he had a history involving firearms and weapons.  Moreover, his release plan was unclear.

In his reply, Mr. Howard asserted that his medical conditions and his high risk from coronavirus qualified as "extraordinary and compelling reasons" warranting relief under U.S.S.G. § 1B1.13. He listed and attached medical records indicating several medical conditions he had not originally included in his motion, which the CDC recognized as increasing his risk in prison.  He explained that he had made significant progress in prison—including completing a drug education program, earning his GED, and several workforce development courses.  He also noted that it had been ten years since his last incident report.  He attached his summary reentry plan, which attested to his positive work appraisals, service as a Suicide Watch Companion, and completion of numerous courses. The plan also showed that, throughout his time in prison, he had multiple disciplinary reports—including three for possessing a dangerous weapon, two for fighting, and three for assaulting with serious injury.  The plan indicated that he was subject to an immigration detainer and that his health status was "Care 2 (Stable, Chronic Care)."

Mr. Howard also submitted numerous letters from his family and friends.  They attested to his rehabilitation in prison and the support he would receive if he were released.

The district court denied Mr. Howard's motion for compassionate release, concluding that on balance the § 3553(a) factors did not support a reduction in sentence or compassionate release.  *See* D.E. 673 at 4.  The court explained that, although his alleged medical conditions were substantial and could indicate susceptibility to severe coronavirus, Mr. Howard was still a danger to the community.  He had been part of an organized and violent gang that intended to commit a significant armed crime.  It noted the sentencing court's observation regarding the sophisticated nature of the criminal scheme and the seriousness of his intended violence.  The court specifically found that even though he had served a portion of his lengthy sentence, a significant percentage remained and reducing his sentence would be inconsistent with the § 3553(a) factors as it would "inadequately reflect the seriousness of [his] offense and the danger he still poses to the public."  *Id.*

Mr. Howard moved the court to reconsider its order, arguing that he had multiple conditions that placed him at an increased risk from coronavirus and the court could consider his rehabilitation rather than solely his pre-trial danger.  The government opposed Mr. Howard's motion for reconsideration, arguing in part that Mr. Howard remained a danger to the community and compassionate relief would be inconsistent with the § 3553(a) factors.  Mr. Howard replied, reiterating many of his same arguments.  He

21-12980              Opinion of the Court                 7

also submitted additional statements from family, support for his community involvement, and medical records indicating his worsening health.

Mr. Howard later filed a notice that his motion for reconsideration was pending pursuant to S.D. Fla. Local Rule 7.1(b)(4), describing the status of the case, reasserting previous arguments, and asserting that his codefendant, Mr. Griffiths, had been granted compassionate release and that, even apart from his vulnerability to the coronavirus, his conditions substantially diminished his ability to provide self-care within prison. The newly assigned district judge then issued an order asking the government to respond to Mr. Howard's motion for reconsideration "with specificity concerning the Defendant's medical conditions and efforts for rehabilitation during his lengthy period of incarceration." D.E. 706 at 1. The government's submission opposed Mr. Howard's motion. Although he "ha[d] shown great rehabilitative efforts, and his seizures and hernia appear to have gotten worse since he filed his initial Motion for Compassionate Release[,]" Mr. Howard was vaccinated and stable and continued to pose a danger to the community. D.E. 714 at 5–6. Mr. Howard replied, arguing that his medical condition was not stable, his vaccination status was not a guarantee that he would not be infected considering new variants, and his ability to provide self-care in prison was diminished. *See* D.E. 721 at 3–5. He also disputed the notion that he remained a danger to the community. *See id.* at 6.

The district court denied Mr. Howard's motion for reconsideration. It noted the filings from both parties and stated that it had "also reviewed the letters from family and fellow inmates" that Mr. Howard filed to attest to his rehabilitation. *See* D.E. 723 at 1. It found that (1) Mr. Howard was vaccinated, and thus had reduced his danger from contracting coronavirus, and (2) the nature of his crime and his conduct in prison indicated that he remained a danger to the community and releasing him would be inconsistent with the § 3553(a) factors.

## II

We review the denial of a motion to reconsider for abuse of discretion. *See United States v. Simms*, 385 F.3d 1347, 1356 (11th Cir. 2004). A court abuses its discretion by applying the wrong legal standard, following improper procedures, making clearly erroneous factual findings, or committing a clear error of judgment. *See United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021). When we review for an abuse of discretion, we bear in mind that "the district court had a 'range of choice' and . . . we cannot reverse just because we might have come to a different conclusion had it been our call to make." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007).

## III

Mr. Howard contends that the district court abused its discretion in denying his motion for reconsideration of his motion for compassionate release. Specifically, he argues that the court failed

to consider his medical conditions apart from his susceptibility to coronavirus, which fit squarely within the definition of "extraordinary and compelling reasons" set forth in 18 U.S.C. § 3582(c)(1)(A)(i) and the policy statement in U.S.S.G. § 1B1.13. He also claims that the court abused its discretion when it failed to properly consider the 18 U.S.C. § 3553(a) factors and erroneously determined that he was a danger to the community. We take each of his contentions in turn.

## A

A court can modify a term of imprisonment if extraordinary and compelling reasons consistent with policy statements issued by the Sentencing Commission warrant the reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The applicable policy statement provides the following:

> [T]he court may reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  Mr. Howard must therefore not only show that he suffers from medical conditions that qualify as "extraordinary and compelling reasons [that] warrant reduction," he must also show that he is no longer a danger the community and that a sentence reduction is consistent with the § 3553(a) factors.  *See United States v. Bryant*, 996 F.3d 1243, 1247–48 (11th Cir. 2021).

The compassionate-release analysis need not be conducted in any particular order.  *See United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021).  In *Tinker*, we held that a district court did not procedurally err by denying a request for compassionate release pursuant to the § 3553(a) sentencing factors without first explicitly determining whether the defendant could present extraordinary and compelling reasons.  *Id.* at 1340.  And we subsequently held that a district court did not abuse its discretion by addressing only whether an extraordinary and compelling reason existed without reaching the defendant's dangerousness or the § 3553(a) sentencing factors.  *See United States v. Giron*, 15 F.4th 1343, 1347–1350 (11th Cir. 2021) ("[T]he absence of even one of these three necessary conditions would foreclose a sentence reduction and skipping over a necessary condition in the § 3582(c)(1)(A) context isn't per se reversible. This is as true for skipping step one

as it is for skipping step three.") (quotation marks and citation omitted).

Here, the district court did not abuse its discretion by failing to analyze Mr. Howard's medical conditions. Although Mr. Howard arguably established various illnesses, the court denied his motion after finding that he was a danger to the community and that releasing him would be inconsistent with the § 3553(a) factors. *See* D.E. 723 at 1 ("[T]he nature of [Mr. Howard's] crime and conduct while in prison indicate that [he] remains a danger to the community and releasing him would be inconsistent with the § 3553(a) sentencing factors."). As noted, Mr. Howard must satisfy all requirements to obtain relief. The district court's decision not to consider one factor after it determined Mr. Howard failed to satisfy the other two is not an abuse of discretion.

## B

Under § 1B1.13, a determination of whether a defendant is a danger to the community is made pursuant to 18 U.S.C. § 3142(g). In turn, § 3142(g) requires courts to consider the nature and circumstances of the offense, the evidence against the defendant, his history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by his release. The first two factors require plenary review on appeal, but the second two factors are subject to clear error review. *See United States v. Hurtado*, 779 F.2d 1467, 1472 (11th Cir. 1985).

With regard to the dangerousness determination, we recognize that Mr. Howard's case presented a close call for the district court.  Mr. Howard—who had been in custody for twenty-five years—provided evidence that he (1) had taken numerous courses, (2) had not had a disciplinary report for 10 years, (3) had worked and served as a suicide watch companion, (4) had support from his family and community, (5) had secured a job, and (6) other inmates thought very highly of his character and rehabilitation.  The government even conceded that he had shown "great rehabilitative efforts."  *See* D.E. 714 at 5.  But the district court chose to weigh more heavily the nature of his crimes and his conduct while in prison.  First, Mr. Howard had told an undercover agent that his heavily armed group intended to kill all the witnesses to a planned drug robbery.  Second, although they were not recent, he had multiple disciplinary reports, including three for possessing a dangerous weapon, two for fighting, and three for assaulting with serious injury.

We understand that a different factfinder may have concluded that Mr. Howard's more recent conduct while incarcerated—including his educational and service efforts—were more probative than a crime that occurred decades ago and disciplinary infractions that occurred more than 10 years ago.  But we cannot say that the district court here failed to consider this evidence.  It asked the government to specifically address Mr. Howard's rehabilitative efforts, *see* D.E. 706 at 1, and it considered both parties' supplemental filings, including Mr. Howard's letter submissions

from his friends and family, *see* D.E. 723 at 1. It ultimately chose to weigh the nature of Mr. Howard's crimes and conduct while in prison more heavily. Given that we are reviewing the district court's denial of the motion for reconsideration for abuse of discretion, we cannot fault the district court for coming to a conclusion that we may not have come to ourselves. Accordingly, we conclude that the district court did not abuse its discretion by denying Mr. Howard's motion for reconsideration.

## IV

The district court's denial of Mr. Howard's motion for reconsideration of his motion for compassionate release is affirmed.

**AFFIRMED.**