[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10834

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSE R. DIAZ-ROSADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:13-cr-20607-KMM-1

_____

Before LUCK, LAGOA, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Jose Diaz-Rosado, a federal prisoner at Fort Dix FCI, appeals the district court's denial of his motion under 18 U.S.C. § 3582(c)(1)(A) for compassionate release and its subsequent denial of his motion for reconsideration of that ruling. We find no error in the district court's rulings, and thus affirm.

## BACKGROUND

Defendant was indicted in 2013 in the Southern District of Florida on one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment stemmed from information provided to law enforcement by a confidential informant ("CI"), who identified Defendant as a member of a drug trafficking organization that transports large quantities of cocaine from Venezuela to the United States. During an ensuing investigation of Defendant, the United States Coast Guard interdicted a vessel off the coast of St. Croix, United States Virgin Islands, carrying 1,157 kilograms of cocaine. All identification on the vessel had been removed and only a fictitious registration was found. Nevertheless, federal agents later discovered that Defendant had purchased the vessel, and that he had directed the CI—whom he believed to be an associate in the drug trafficking operation—to purchase two outboard motors for it.

Defendant subsequently was indicted in the District of Puerto Rico on similar charges after federal agents in Puerto Rico seized 1,032 kilograms of cocaine from a vessel off the coast of Guayama, Puerto Rico. The vessel was registered to Defendant, and the agents determined that Defendant had hired a two-person crew and rented a dock for the vessel in Fajardo, Puerto Rico. In addition, the agents uncovered evidence suggesting that Defendant and another individual planned to follow behind the vessel while the cocaine found onboard was being transported.

Defendant pled guilty to the Southern District of Florida charge without a plea agreement, and he was sentenced to life. On direct appeal, this Court affirmed Defendant's conviction but re-manded his case for resentencing to correct an error in the district court's application of a role enhancement. *See United States v. Diaz-Rosado*, 615 F. App'x 569, 581 (11th Cir. 2015). Defendant was sentenced to 240 months on remand, and this Court affirmed. *See United States v. Diaz-Rosado,* 725 F. App'x 847, 855 (11th Cir. 2018). After a series of Hurricane Maria related delays, Defendant also pled guilty to the District of Puerto Rico charge, this time with a plea agreement. He was sentenced to 108 months on that charge, to be served concurrently to his District of Florida sentence.

Defendant filed a timely motion under 28 U.S.C. § 2255 to vacate his sentence in the Southern District of Florida case. In sup-port of his motion, Defendant alleged ineffective assistance of counsel and due process violations related to the sentencing court's reliance on "materially false" information during his sentencing

hearing.  The Government opposed Defendant's § 2255 motion, which is currently pending in the district court.

In October 2020, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]  As amended by the First Step Act of 2018 (the "First Step Act"), that statute authorizes a district court to reduce a defendant's sentence if the reduction is warranted by "extraordinary and compelling reasons" and if it is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) and the applicable Guidelines policy statements. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[2]  Defendant filed his § 3582(c) motion with the assistance of counsel, and he was counseled throughout the proceedings related to his motion below.

In support of his motion for compassionate release, Defendant claimed that he was fearful because of his cooperation with the Government, that he had been sentenced based on erroneous information, and that he suffered from fainting spells related to his blood pressure, advanced age, hernia, and post-traumatic stress disorder ("PTSD"), placing him at a high risk of significant illness or death if he contracts COVID while incarcerated.  Defendant did

---

[1]  Defendant first exhausted his administrative remedies by submitting a request for compassionate release to the warden of Fort Dix on April 15, 2020. The warden denied Defendant's request on August 3, 2020.

[2]  Section 3582(c)(1)(A) also authorizes a sentence reduction under certain circumstances if "the defendant is at least 70 years of age" but it is undisputed that Defendant—now 57 years old—does not qualify for an age-based sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

not specifically address the § 3553(a) sentencing factors, albeit he stated that he had taken his rehabilitation seriously while incarcerated. In a later-filed reply brief, Defendant added that (1) he also suffered from gingivitis and far-sightedness and (2) Fort Dix had 229 inmates and 12 staff members who were COVID positive.

While his § 3582(c) motion was pending in the district court, Defendant filed an "Expedited Motion" in which he reiterated his risk of COVID infection due to his fainting spells, hernia, PTSD, and the lack of proper protective measures at Fort Dix. Defendant also alleged in the expedited motion that a physician's assistant ("PA") recently had evaluated him at Fort Dix and "notified [him] informally that he had to stop consuming certain drinks because . . . he [was] suffering from serious kidney failure." According to Defendant, although the PA had requested that a specialist evaluate him, he had not received any formal communication from the BOP addressing his "failing kidney." As relief, Defendant again asked for compassionate release or, alternatively, an order directing the BOP to provide emergency evaluation or medical treatment.

In a supplement to his expedited motion, Defendant alleged unsanitary conditions at Fort Dix, and he suggested that its COVID numbers were higher than reported. In addition, Defendant again claimed "one of his kidneys is failing." Similar to his first compassionate release motion, the only legal authority Defendant cited in his expedited motion was § 3582(c), the statute that authorizes compassionate release for extraordinary and compelling reasons,

although Defendant opined in the supplement that his sentence "may become a death sentence in violation of the Eight Amendment due to the living conditions and medical neglect" imposed by the BOP.

In response to Defendant's multiple filings, the Government submitted Defendant's prison medical records, which did not indicate any current serious or unresolved health issues. The Government noted that Defendant's laboratory results from November 10, 2020 showed an elevated creatinine, which it argued was common in an individual who is dehydrated. Nevertheless, the Government asserted that it contacted Fort Dix's resident physician, who after reviewing medical records and laboratory results, advised that "[Defendant] does not have any renal abnormalities. His GFR according to his labs done on 11/6/20 is 71 anything above 60 is considered normal renal function." Based on Defendant's medical records, the Government argued that Defendant did not demonstrate an extraordinary and compelling reason warranting his early release pursuant to § 3582(c). The Government also argued that the § 3553(a) factors did not favor Defendant's early release and that he would remain a danger to the community if released.

The district court denied Defendant's motion for compassionate release and his expedited motion in a single order. The court acknowledged in its order that a medical condition can constitute an extraordinary and compelling reason for compassionate release under § 3582(c) if the condition "has been identified by the

[CDC] as elevating [a prisoner's] risk of becoming seriously ill from COVID-19." But the court noted that most of Defendant's alleged medical conditions—high blood pressure, fainting spells, hernia, and PTSD—had not been so identified by the CDC, and that his age (55 at the time) was not so advanced as to raise a heightened COVID risk. As to Defendant's claimed failing kidney, the court recognized that chronic kidney disease is listed as a heightened risk condition for COVID, but it determined that Defendant had failed to show that his kidney disease was chronic, that the disease affected both kidneys or diminished his overall kidney function, or that it was severe enough to require treatment. The district court did not consider whether the § 3553(a) factors weighed in favor of releasing Defendant or whether he would be a danger to the community if released, and it did not address his alternative request for the court to order the BOP to provide emergency evaluation or treatment.

Defendant filed a motion for reconsideration, in which he argued the district court had overlooked the relevant case law, failed to address his allegation of inadequate care for his kidney disease, and ignored news articles and other information about the COVID outbreak. The court denied the motion, noting that it was based on previously asserted—and rejected—arguments, and that Defendant had failed to meet the legal standard for reconsideration. Specifically addressing Defendant's alleged kidney condition, the court emphasized that Defendant had failed to provide any evidence showing the severity of his kidney disease or indicating that

it affected both kidneys, whereas the lab results provided by the Government indicated that Defendant had no renal abnormalities. Again, the court did not discuss the § 3553(a) factors or whether Defendant was a danger to the community.

Defendant appeals, arguing that the district court abused its discretion by denying his motion for compassionate release and by failing to order the staff at Fort Dix to provide additional evaluation and treatment for his kidney condition. Defendant is represented by counsel on appeal, as he was in the proceedings below. Defendant acknowledges in his appellate brief that he has now received two doses of a COVID vaccination. We find no error in the court's rulings denying compassionate release and reconsideration, and thus affirm.

## DISCUSSION

We review de novo whether a defendant is eligible for compassionate release under § 3582(c). *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021). Once eligibility is established, we review the denial of a defendant's motion for compassionate release pursuant to § 3582(c) motion for an abuse of discretion. *See id.* "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (quotation marks omitted)). The abuse of discretion standard allows the district court a "range of choice" that we will not reverse "just

because we might have come to a different conclusion had it been our call to make." *See id.* at 912 (quotation marks omitted).  We apply the same abuse of discretion standard when reviewing the denial of a motion for reconsideration.  *See United States v. Llewlyn*, 879 F.3d 1291, 1294 (11th Cir. 2018).

As amended by the First Step Act, § 3582(c)(1)(A) authorizes the district court to grant a defendant's motion for compassionate release if the court finds that:  (1) "extraordinary and compelling reasons warrant" such relief and (2) the defendant's early release is consistent with the sentencing factors of § 3553(a) and the "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant policy statement, found in U.S.S.G. § 1B1.13, echoes the statutory requirements, stating that a district court may grant a defendant's motion for compassionate release "if, after considering the factors set forth in . . . § 3553(a)," the court determines that:  (1) "[e]xtraordinary and compelling reasons warrant" the defendant's release and (2) "[t]the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13.  *See also United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that "1B1.13 is an applicable policy statement for all [§ 3582(c)] motions" and that district courts do not have discretion "to develop other reasons that might justify a reduction in a defendant's sentence" (quotation marks omitted)); *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021) (listing three conditions for a sentence reduction under § 3582(c):  support in the § 35553(a) factors,

extraordinary and compelling reasons, and adherence to U.S.S.G. § 1B1.13's policy statement).

The applicable Guidelines policy statement, cited above, identifies three extraordinary and compelling reasons that can authorize a court to grant a motion for compassionate release under § 3582(c). *See* U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). First, a defendant's medical condition can constitute an extraordinary and compelling reason for release if the defendant can show that he is suffering either from a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care" in prison and "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Second, release is permitted under certain circumstances if the defendant is at least 65 years old. *See* U.S.S.G. § 1B1.13 cmt. n.1(B). And finally, a defendant's family circumstances can create an extraordinary and compelling reason for release based on the "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). The policy statement also contains a catch-all provision that allows the Bureau of Prisons ("BOP") to determine that there are other extraordinary and compelling reasons for a particular defendant's release, but this Court has held that only the BOP—as opposed to the court—has the authority to determine that release is warranted under that provision. *See Bryant*, 996 F.3d at 1263 ("We cannot replace the phrase '[a]s

determined by the Director of the [BOP]' with 'as determined by a district court.'").

The district court correctly determined that Defendant does not meet the standard for compassionate release set out in any of the above provisions. Defendant did not allege qualifying family circumstances warranting his release, and it is undisputed that Defendant, currently 57 years old, does not meet the requirements for compassionate release under the age-based provision. Defendant primarily relies on his medical conditions to support his motion for compassionate release, citing his high blood pressure causing fainting spells, a hernia, PTSD, advanced age, and a "failing kidney." Defendant did not present any evidence suggesting that his high blood pressure, fainting spells, hernia, or PTSD are terminal or that any of these conditions substantially interfere with his ability to care for himself in prison. Depending on its severity, kidney failure could possibly qualify as a "terminal illness" or a qualifying "serious physical or medical condition." *See* U.S.S.G. § 1B1.13 cmt. n.1(A). But Defendant did not present any evidence to show that his kidney disease is severe enough to be considered terminal or that it is unmanageable in prison. The medical records submitted by the Government indicate, on the contrary, that Defendant's overall kidney function is undiminished.

To the extent Defendant claims his medical conditions put him at heightened risk related to COVID, that claim is undermined by Defendant's admission on appeal that he has received two doses of a COVID vaccination. Furthermore, the CDC does not identify

high blood pressure, fainting spells, hernias, or PTSD as an underlying medical condition that presents a COVID-related risk. Chronic kidney disease is so identified but again, Defendant did not provide evidence to substantiate his claim to have severe or chronic kidney disease, and the medical records submitted by the Government tend to disprove that claim. *See Giron*, 15 F.4th at 1346 (rejecting a prisoner's argument that "the confluence of his medical conditions and COVID-19 creates an extraordinary and compelling reason warranting compassionate release" when the prisoner's medical conditions did not meet the criteria of § 1B1.13).

In addition to relying on his various medical conditions, Defendant argues he is entitled to early release because (1) he fears retaliation for cooperating with the Government, (2) his sentence was based on erroneous information introduced into evidence during his sentencing hearing, and (3) he has been committed to rehabilitation while incarcerated. As noted above, this Court has held that relief can only be granted under § 3582(c) based on one of the reasons expressly set out in the applicable Guidelines policy statement—that is, a qualifying medical condition, advanced age, or family circumstances requiring the defendant to act as a caretaker to a minor child, spouse, or registered partner. *See Bryant*, 996 F.3d at 1265 ("Because [the defendant's] motion does not fall within any of the reasons that 1B1.13 identifies as extraordinary and compelling, the district court correctly denied his motion for a reduction of his sentence." (quotation marks omitted)). Thus, none of the

additional reasons cited by Defendant are legitimate grounds for granting his motion for compassionate release.

Neither is compassionate release an available remedy for the prison staff's alleged indifference to Defendant's kidney condition. Defendant argues that he has not received further evaluation for his kidney disease in violation of the Eighth Amendment, and that the district court erred by failing to order such evaluation and treatment. But § 3582(c), the only legal authority cited in Defendant's counseled motions and supplemental filings below and in his counseled briefing on appeal, does not provide a mechanism to redress an Eighth Amendment violation either via compassionate release or any other means. *See* 18 U.S.C. § 3582(c)(1)(A). Instead, the "appropriate . . . relief from prison conditions that violate the Eighth Amendment during legal incarceration" would be a lawsuit—under the circumstances here, presumably filed under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)—seeking as relief an order "to require correction of any condition causing cruel or unusual punishment." *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990). *See also Alba v. Montford*, 517 F.3d 1249, 1253 (11th Cir. 2008) (noting that a prisoner may bring a *Bivens* action for damages against federal prison officials for violating his Eighth Amendment right to adequate medical care); *United States v. Bravo*, 203 F.3d 778, 782 (11th Cir. 2000) (holding that § 3582(c) does not grant district courts the jurisdiction to consider "extraneous resentencing issues" such as an Eighth Amendment claim). Defendant has not filed such a lawsuit, and as

the case currently stands there is no ruling from the court below and no basis in the record for this Court to determine whether an Eighth Amendment violation has occurred and whether such a violation is redressable under *Bivens*.

Finally, the district court did not err by denying Defendant's motion for reconsideration. The purpose of a reconsideration motion is to correct "a clear error of law or manifest injustice" or to address previously unavailable evidence or an intervening change in the controlling law. *Gulisano v. Burlington*, 34 F.4th 935, 945 (11th Cir. 2022); *see also Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (denying a motion to reconsider where the motion "attempted to relitigate old matters and present evidence that could have been raised prior to the entry of judgment"). It is not to rehash issues that already have been litigated. *See Gulisano*, 34 F.4th at 945. Here, the court correctly determined that Defendant failed to show that reconsideration was warranted on any appropriate ground.

## CONCLUSION

As the movant, Defendant had the burden of establishing his entitlement to early release under § 3582(c). *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). The district court correctly held that Defendant failed to meet that burden here. The court's order denying Defendant's § 3582(c) motion and his subsequent motion for reconsideration is thus **AFFIRMED.**